# Richmond

CITY OF RICHMOND v. RICHMOND-PETERSBURG TURNPIKE AUTHORITY.

October 14, 1963.

Record No. 5625.

Present, All the Justices.

The opinion states the case.

*James A. Eichner, Assistant City Attorney (J. E. Drinard, City Attorney*, on brief), for the plaintiff in error.

*Frederick T. Gray (Williams, Mullen & Christian*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On July 20, 1959, Richmond-Petersburg Turnpike Authority, hereinafter referred to as Authority, filed its application for the

"correction of erroneous special assessments," made against it on October 24, 1958, by the city of Richmond, hereinafter referred to as City, for the construction of sidewalks abutting the lands of Authority. Authority claimed that, as a political subdivision of the Commonwealth of Virginia it was exempted from such assessments, under and by virtue of Section 33-255.35, Code of Virginia, Acts 1954, p. 930.

City moved to dismiss the application on the ground that Authority had not appealed to the Court within 30 days after the assessments had been made, as required by Section 15-675, Code of Virginia. It also filed an answer denying that property of Authority was exempt from such assessments.

The Court, in a written opinion, held that the application had been duly filed under § 58-1145, Code of Virginia, 1959 Repl. Vol., and that the property of Authority was exempt from the assessments. On October 12, 1962, a final order was entered in accordance with that holding, exonerating the property of Authority.

The City assigned error to the rulings. The facts and exhibits are stipulated and only questions of law are presented.

On its motion to dismiss, City pointed out that the application had been filed approximately nine and one-half months after the assessments had been made. It contended that the "exclusive remedy for correction of special assessments for local improvements, including those for sidewalk paving, is that given by § 15-675, Code of Virginia 1950," 1956 Repl. Vol., which provides that a landowner aggrieved by such an assessment "shall, within thirty days thereafter, but not afterwards, have an appeal as of right to the corporation or hustings court of the city, * * * in whose jurisdiction the city is situated." In support, it argues that "a sidewalk paving assessment is not a tax within the meaning of (Code) §§ 58-12 and 58-1145."

Code § 58-1145 provides that "Any person assessed with county or city levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specially provided by law, within two years from the 31st day of December of the year in which such assessment is made, * * * apply for relief to the circuit court of the county or any city court of record of the city wherein such assessment was made."

Section 33-20 of the City Code entitled, "Special Assessments—Generally," reads as follows:

"The assessor shall list in the land book all charges made for the

use of streets or alleys. The assessor shall maintain a separate record of special assessments and charges for improvements made pursuant to section 12.06 of the Charter of the city. When such assessments and charges are not paid in the year in which they are made, they shall be added to the assessment for the succeeding year and included in the real estate tax bill for such succeeding year."

Section 12.06 of the City Charter provides that proceedings relating to such assessments shall be governed by the provisions of Virginia Code §§ 15-669 to 15-676. Code § 15-676 provides that: "The amount finally assessed against * * *" each landowner "shall be a lien on his abutting land, * * *."

In *City of Richmond* v. *Eubank*, 179 Va. 70, 18 S. E. 2d 397, we held that an assessment for a sewer tax made a lien on real estate was a burden on the real estate, and was like any other real estate tax, and such tax fell "within the class designated in the Tax Code Section 414 (now Section 58-1145) as 'Tax on real estate.'" 179 Va., *supra*, p. 77.

Courts and text writers, generally, make a distinction between special assessments, or special taxes to pay for local improvements, and general tax levies for purposes of carrying on the government. *City of Richmond* v. *Eubank, supra*, 179 Va. at p. 83; *Norfolk* v. *Ellis*, 26 Gratt. (67 Va.) 224; *Sands* v. *Richmond*, 31 Gratt. (72 Va.) 571; 63 C. J. S., Municipal Corporations, § 1290 (B), pp. 1028 *et seq.*; 47 Am. Jur., Special or Local Assessments, § 3, p. 565; 14 McQuillin on Municipal Corporations (3rd ed.), § 38-01, pp. 13 *et seq.*

The word "taxes" is not synonymous with "assessments." The two words have different meanings when applied in different matters and different situations. It is difficult to lay down any fixed or positive rule of distinction. Each case must be determined from the natural and legal effect of the language used in imposing the charge, the language and provisions of any constitutional or statutory provisions involved. *The State* v. *The Mayor and Common Council of the City of Newark*, 36 N. J. Law (7 Vroom) 478, 13 Am. Rep. 464. Cf. *Chicago* v. *Baptist Theological Union* (1885), 115 Ill. 245, 252, 2 N. E. 254; *South Park Commissioners* v. *Wood* (1915), 270 Ill. 263, 273, 110 N.E. 349; *Atlanta* v. *First Presbyterian Church* (1891), 86 Ga. 730, 13 S. E. 252.

In two recent cases we have held that relief under § 58-1145 is not confined to the correction of an assessment which is merely erroneous, but includes also levies and assessments claimed to be

unconstitutional, illegal and void; and that the section is to be liberally construed to furnish the remedy so provided. *Todd* v. *County of Elizabeth City*, 191 Va. 52, 56, 60 S. E. 2d 23; *Chesapeake and Potomac Tel. Co.* v. *Newport News*, 194 Va. 409, 413, 73 S. E. 2d 394. Cf. *Commonwealth* v. *Cross*, 196 Va. 375, 379, 83 S. E. 2d 722.

Here it clearly appears that the assessments involved constituted charges which became liens upon real estate and are embraced within the classification designated in Code § 58-1145 as "county or city levies or other local taxes on real estate."

■ The Richmond-Petersburg Turnpike Authority was created by Chapter 705, Acts 1954, pp. 920 *et seq.*, Code of Virginia, 1950, 1959 Repl. Vol. §§ 33-255.24—33-255.44, inclusive, authorizing it to construct, maintain and operate a turnpike.

Section 33-255.27 reads as follows:

"There is hereby created and constituted a political subdivision of the Commonwealth to be known as 'The Richmond-Petersburg Turnpike Authority.' The exercise by the Authority of the powers conferred by this Article in the construction, operation and maintenance of the turnpike project authorized by this Article shall be deemed and held to be the performance of an essential governmental function."

Section 33-255.35 provides:

"*Exemption from taxation.*—The exercise of the powers granted by this Article shall be in all respects for the benefit of the inhabitants of the Commonwealth, for the increase of their commerce, and for the promotion of their safety, health, welfare, convenience and prosperity, and as the operation and maintenance of the project by the Authority will constitute the performance of essential governmental functions, *the Authority shall not be required to pay any taxes or assessments upon the project or any property acquired or used by the Authority under the provisions of this Article* or upon the income therefrom; and the bonds, notes, certificates or other evidences of borrowing issued under the provisions of this Article, their transfer and the income therefrom including any profit made on the sale thereof, shall at all times be free and exempt from taxation by the Commonwealth and by any municipality, county or other political subdivision thereof." (Emphasis added.)

Section 183 (a) of the Constitution provides that "Property owned directly or indirectly by the Commonwealth, or any political sub-

division thereof" shall be exempt from taxation, state and local, unless otherwise provided in the Constitution.

Section 58-12(1) of the Code, following the Constitutional provision, provides in part that: "Property owned directly or indirectly by the Commonwealth, or any political subdivision thereof * * *" shall be "exempt from taxation, State and local."

The words of the foregoing constitutional and statutory provisions must be read and considered in their plain and natural sense. They clearly and distinctly express the intention to exempt Richmond-Petersburg Turnpike Authority, a political subdivision of the Commonwealth, from "any taxes or assessments upon the project or any property acquired or used by the Authority," under the provisions of the 1954 Act.

It matters not that the words "taxes" and "assessments" may have different meanings under different circumstances. Both were here employed. There is nowhere in the Constitution or statutes any exception of special assessments from the exemption. The use of the word "any" avoided the necessity of spelling out specific items or charges as excluded. The levies here, whether they be called taxes or assessments, were taxes—maybe a special kind of taxes—that is, local taxes assessed and imposed as liens upon real estate of a political subdivision of the Commonwealth of Virginia.

For the foregoing reasons the order of the trial court is affirmed.

*Affirmed.*