Present:  Lemons, C.J, Goodwyn, Millette, Mims, McClanahan, and
Powell, JJ., and Koontz, S.J.

CVAS 2, LLC

                                          OPINION BY
v.    Record No. 140505          JUSTICE LEROY F. MILLETTE, JR.
                                        January 8, 2015
CITY OF FREDERICKSBURG


           FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                        Gordon F. Willis, Judge

     In this appeal we consider whether a circuit court had

authority to enter a decree of sale of real estate pursuant to

a locality's suit to collect delinquent real estate taxes and

delinquent special assessments.

## I.    Facts And Proceedings

     The City of Fredericksburg (the "City") created the

Celebrate Virginia South Community Development Authority (the

"CDA") in 2000 by resolution, and ratified and amended that

resolution in 2005.  CVAS 2, LLC owns real estate located

within the City's geographic area.  The City has levied that

real estate with taxes, and the local governing body has levied

that real estate with special assessments for the CDA's

benefit.  CVAS 2 has not paid all these taxes and special

assessments.  CVAS 2 has outstanding real estate taxes dating

back to the 2012 fiscal year, and has outstanding special

assessments dating back to the 2009 fiscal year.

On June 13, 2013, the City brought suit against CVAS 2. The City sought to have CVAS 2's real estate sold in order to collect CVAS 2's outstanding payments for the delinquent real estate taxes and special assessments. The City's complaint and the City's motion for decree of sale cited Article 4 of Chapter 39 of Title 58.1 as the basis for its complaint and the authority for the decree of sale.[1]

CVAS 2 filed a motion to dismiss along with its amended answer. The motion to dismiss asserted in relevant part that the City failed to comply with Code § 58.1-3965, and therefore its complaint could not result in a decree of sale to recover the delinquent real estate taxes and special assessments. After a hearing on the matter, the circuit court granted the City's motion for the sale of CVAS 2's real estate. The court subsequently entered a decree of sale, in which the court (1) denied CVAS 2's motion to dismiss, (2) ordered that CVAS 2's real estate be sold in gross to pay "the taxes, penalties, interest, special assessments, fees, costs, and any

---

[1] In its complaint, the City alleged that the action was "brought pursuant to Virginia Code §§ 58.1-3965 and 58.1-3965.2, et seq." In its motion for decree of sale, the City asserted that the case "was initiated upon the filing of that certain Complaint among the records of this Court citing all notices required by Virginia Code § 58.1-3965, et seq., having been complied with in this matter." Later in that motion, the City specifically cited Code §§ 58.1-3965, 58.1-3965.2, and 58.1-3969.

liens whatever thereon" pursuant to Code §§ 15.2-5158, 58.1-3965, and 58.1-3969, and (3) appointed a special commissioner to oversee the sale of CVAS 2's real estate and to disburse the funds from that sale.

CVAS 2 timely filed a petition for appeal with this Court. We granted CVAS 2's single assignment of error:

> 1. The trial court erred in its construction of Virginia Code §§ 15.2-5158 and 58.1-3965(A) by ordering the sale of CVAS 2's [real estate] when taxes are less than two (2) years delinquent.

## II. Discussion

### A. Standard Of Review

Whether this Court has jurisdiction of an appeal is a question of law we review de novo. See Henderson v. Ayres & Hartnett, P.C., 285 Va. 556, 563, 740 S.E.2d 518, 521 (2013). Issues of statutory interpretation are questions of law we review de novo. Commonwealth v. Herring, 288 Va. 59, 66, 758 S.E.2d 225, 229 (2014).

### B. The City's Motion To Dismiss CVAS 2's Appeal To This Court

Pursuant to Rule 5:4, the City filed a motion to dismiss CVAS 2's appeal to this Court on the basis that the circuit court's entry of the decree of sale was not a final order giving rise to this Court's jurisdiction under Code § 8.01-670(A). It is a familiar principle that a "court always has jurisdiction to determine its own jurisdiction." Rutter v.

3

Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 13, 710 S.E.2d 460, 464 (2011) (collecting cases) (internal quotation marks omitted).

Final orders, as envisioned by Code § 8.01-670(A), are not the only types of orders giving rise to this Court's jurisdiction. "[F]or [this] Court to have jurisdiction of [an] appeal, the order from which [a petitioner] appealed must be either a final order or an interlocutory order from which an appeal is statutorily authorized." Comcast of Chesterfield Cnty., Inc. v. Board of Supervisors, 277 Va. 293, 300, 672 S.E.2d 870, 873 (2009). Title 8.01 of the Code of Virginia establishes civil remedies and procedures. The General Assembly has provided that, except in cases involving an administrative agency, the Virginia Workers' Compensation Commission, or domestic relations, which would vest jurisdiction in the Court of Appeals, this Court has jurisdiction of an appeal from an interlocutory decree or order "in any case on an equitable claim" in three enumerated situations, one of which applies here. Code § 8.01-670(B)(2); see also Code § 17.1-405.

The decree of sale from which CVAS 2 appeals is an interlocutory decree in a case on an equitable claim, even though that claim is statutory in nature. The General Assembly has the power to define the statutory rights it creates to be

4

of a legal or equitable nature.[2]  See, e.g., Campbell v. Harmon,

271 Va. 590, 597, 628 S.E.2d 308, 311 (2006) (Code § 8.01-31

permits the beneficiary of a trust to file an "accounting in

equity" against the trustee); City of Portsmouth v. City of

Chesapeake, 232 Va. 158, 164, 349 S.E.2d 351, 354 (1986)

(former Code § 15.1-1026 et seq., now Code § 15.2-3100 et seq.,

allowing cities to file suit to determine the boundary lines

between them, conferred "only legal, not equitable, rights").

The City filed suit against CVAS 2 to sell CVAS 2's real estate

for delinquent real estate taxes and special assessments.  The

statutory scheme upon which the City filed suit, and the

authority relied upon by the circuit court to enter the decree

of sale, was Article 4 of Chapter 39 of Title 58.1.  The

General Assembly explained that "[p]roceedings under this

article for . . . the sale of real estate on which county,

city, or town taxes are delinquent shall be by bill in equity."

Code § 58.1-3967 (emphasis added).

---

[2] "There shall be one form of civil case, known as a civil action."  Rule 3:1.  This Rule "effectively abolish[es] the division of trial court dockets into legal and equity proceedings."  Virginia Elec. & Power Co. v. Norfolk S. Railway Co., 278 Va. 444, 454 n.3, 683 S.E.2d 517, 522 n.3 (2009). Despite this change to how pleadings are labeled and filed, this Rule does not abolish the existence of, and distinction between, legal and equitable claims.  Rule 3:1; VEPCO, 278 Va. at 454 n.3, 683 S.E.2d at 522 n.3.

As the City's case is a "case on an equitable claim" and does not involve an administrative agency, the Virginia Workers' Compensation Commission, or domestic relations, this Court has jurisdiction to resolve this appeal from the interlocutory order "[r]equiring . . . title of property to be changed." Code § 8.01-670(B)(2). We therefore deny the City's motion to dismiss CVAS 2's appeal.

C. Localities, Community Development Authorities, And The Imposition Of Taxes And Assessments On Real Estate

This appeal requires us to address how different governmental entities may levy and collect certain taxes and assessments on real estate. In particular, five statutory provisions allowing for such action are implicated in this dispute. "Because we do not read statutes in isolation, and because statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished," we first review these relevant statutes so that we can more readily resolve the issues on appeal. Bailey v. Loudoun Cnty. Sheriff's Office, 288 Va. 159, 169-70, 762 S.E.2d 763, 765 (2014) (internal quotation marks omitted).

1. How A Locality May Levy And Collect Taxes On Real Estate

In compliance with the Constitution of Virginia, the General Assembly directs that certain real estate "shall be assessed for local taxation in accordance with the provisions

6

of [Chapter 32 of Title 58.1, Code § 58.1-3200 et seq.,] and other provisions of law." Code § 58.1-3200; see also Va. Const. art. X, § 4. In Code § 58.1-3965, the General Assembly established the method for a locality to collect delinquent taxes by selling the subject real estate.[3] In relevant part, the "officer charged with the duty of collecting taxes for the locality" must abide by the following:

> When any taxes on any real estate in a locality are delinquent on December 31 following the second anniversary of the date on which such taxes have become due . . . such real estate may be sold for the purpose of collecting all delinquent taxes on such property.

Code § 58.1-3965(A). This provision contains two aspects important to this appeal. First, the locality may not bring suit to collect delinquent taxes on real estate until the December 31 two years after the real estate taxes became due. Second, the suit to collect such delinquent taxes may be enforced through the sale of the real estate upon which the delinquent taxes were levied.

Also, the General Assembly allows a city to reduce the two year delay in Code § 58.1-3965(A) to a single year. That is, a city – but not a county or town – may pass an ordinance allowing it to file suit, for the purposes of having real

---

[3] A "[l]ocality" may be either a county, city, or town. Code § 15.2-102.

7

estate sold to collect delinquent taxes on such property, on the December 31 one year after such outstanding taxes become due.  Code § 58.1-3965.1.

2.    How A Locality May Levy And Collect Special Taxes On Behalf Of A Community Development Authority

Localities may, "by ordinance or resolution[,] create a community development authority."  Code § 15.2-5155(A).  The General Assembly has provided numerous powers to any community development authority created by a locality.  See Code §§ 15.2-5114; 15.2-5158.  In order "to finance the services and facilities provided by the authority," one such power is the ability to "[r]equest annually that the locality levy and collect a special tax on taxable real property within the development authority's jurisdiction."  Code § 15.2-5158(A)(3).  Thus, the community development authority may not levy and collect the special tax itself, but may request that the locality do so on its behalf.  Then, once the locality receives the revenues from the special tax, those revenues are directed to "be paid over to the development authority for its use pursuant to this chapter."  Id.

The General Assembly has established the following method for a locality to collect such special taxes:

> The special taxes shall be collected at the same time and in the same manner as the locality's taxes are collected, and the proceeds shall be kept in a separate account and be used only for the purposes provided in this chapter.

Id. The parties dispute how the statutory phrase "at the same time and in the same manner" operates. "As this statutory language is neither ambiguous nor absurd, we conclude that it means exactly what it says." Bailey, 288 Va. at 173, 762 S.E.2d at 768; see also Sheppard v. Junes, 287 Va. 397, 403, 756 S.E.2d 409, 411 (2014).

"[I]n the same manner" means that a special tax must be collected in accordance with the procedural provisions that govern the collection of "the locality's taxes." That is, how a special tax is collected is determined by the manner in which "the locality's taxes" are collected. Code § 15.2-5158(A)(3).

"[A]t the same time" must mean something different than "in the same manner." To reason otherwise contravenes our repeated admonition of making any portion of a statute meaningless or surplusage. See, e.g., Idoux v. Helou, 279 Va. 548, 554, 691 S.E.2d 773, 776 (2010). The preposition "at" in this phrase is "used as a function word to indicate [a] position in time." Webster's Third New International Dictionary 136 (1993). The position in time to which this phrase relates is when the locality collects "the locality's taxes." That is, when a special tax is collected is determined

9

by the time when "the locality's taxes" are collected. Code § 15.2-5158(A)(3).

The General Assembly coupled the collection of special taxes under Code § 15.2-5158(A)(3) to the collection of "the locality's taxes." This general phrase – "locality's taxes" – does not specify what type of tax the locality must use as a prerequisite to collect special taxes, and therefore the locality may choose to what tax it wishes to attach the collection of special taxes. Then, whatever tax the locality chooses to be the prerequisite for collecting special taxes in any given situation will govern the "at the same time and in the same manner" analysis.

This case is illustrative. The City sought to collect delinquent real estate taxes as the type of "locality's taxes" serving as the prerequisite necessary to collect delinquent special taxes. Delinquent real estate taxes are collected pursuant to Code § 58.1-3965. Thus, our analysis of the statutory phrase "at the same time and in the same manner" in Code § 15.2-5158(A)(3) is necessarily related to Code § 58.1-3965 for purposes of the City's appeal. Consequently, when a Code § 15.2-5158(A)(3) special tax is collected ("at the same time") is dictated by Code § 58.1-3965, so that the City can collect delinquent special taxes only at the time when the City properly seeks to collect delinquent real estate taxes under

10

Code § 58.1-3965.  Further, how a Code § 15.2-5158(A)(3) special tax is collected ("in the same manner") is governed by Code § 58.1-3965, thereby allowing, in pertinent part, the City to sell the subject real estate to recover delinquent special taxes.  See Code § 58.1-3965(A).

3.    How A Local Governing Body May Levy And Collect A Special Assessment On Behalf Of A Community Development Authority

As part of the powers the General Assembly afforded to all community development authorities, a development authority has the ability to have a "special assessment . . . imposed by the local governing body" in order to "[f]inance the services and facilities [the development authority] provides to abutting property within the district."  Code § 15.2-5158(A)(5).  As with special taxes, the community development authority does not have the power to levy and collect the special assessment itself.  Instead, the local governing body must levy and collect such a special assessment on the development authority's behalf.[4]  Then, once the locality receives the revenues from the special assessments "which the locality elects to impose upon [a development authority's] request," those revenues are directed to "be paid over to the development authority for its use under this chapter."  Id.

---

[4] The "[g]overning body" of the locality may be either "the board of supervisors of a county, council of a city, or council of a town."  Code § 15.2-102.

11

The General Assembly has established the following method for a local governing body to collect such special assessments:

> Notwithstanding any other provision of law, any assessments made pursuant to this section may be made effective as a lien upon a specified date, by ordinance, but such assessments may not thereafter be modified in a manner inconsistent with the terms of the debt instruments financing the improvements.

Id. Unlike a special tax for the benefit of a community development authority under Code § 15.2-5158(A)(3), this provision provides that a special assessment for the benefit of a community development authority must be collected as a lien. Code § 15.2-5158(A)(5).

Moreover, the method in which a delinquent special assessment is collected differs significantly from the method in which a delinquent special tax is collected. Unlike Code § 15.2-5158(A)(3), which relates to special taxes, Code § 15.2-5158(A)(5), which relates to special assessments, contains no reference to being collected at the same time and in the same manner as the locality's taxes are collected. Thus, unlike a special tax, a special assessment "may be made effective as a lien upon a specified date, by ordinance." Code § 15.2-5158(A)(5). There is no requirement that the special assessment must be collected when the locality's taxes are collected, or that it be collected under the procedures governing the locality's collection of taxes. Consequently, a

12

special assessment need not be collected "at the same time and in the same manner" as another type of locality's taxes, including, for example, real estate taxes under Code § 58.1-3965.  Simultaneously, however, a suit to collect delinquent special assessments under Code § 15.2-5158(A)(5) lacks the authority set forth in Code § 58.1-3965(A) to sell the real estate in order to collect the delinquent special assessment.

4.   Additional Methods To Collect Special Taxes And Special Assessments

Finally, the General Assembly has provided additional methods to expedite the collection of special taxes or special assessments:

> In addition to the authority provided by subsection A of § 58.1-3965, a locality may provide, as part of any ordinance[:]
>
> (ii) to levy special taxes or special assessments on real property within any district covered by the community development authority or on abutting property within the district, that proceedings be instituted to sell any such real property when any special tax or special assessment described under subdivision A 3 or A 5 of [Code] § 15.2-5158 imposed on the property is delinquent on the first anniversary of the date on which the tax or assessment became due.

Code § 58.1-3965.2 (paragraph break added).  This provision permits localities to expedite the collection of delinquent obligations by shortening the period of delinquency required before selling the subject real estate from two years to one year.  Thus, the locality may provide "as part of any

13

ordinance" that a suit to collect delinquent special taxes or special assessments may result in real estate being sold so long as the suit is filed on or after one year from when the special tax or special assessment became due.  Code § 58.1-3965.2(ii) (emphasis added).

Such an ordinance, as pertaining to special taxes, would separate the collection of special taxes from the default requirement under Code § 15.2-5158(A)(3) that the locality's collection of special taxes must be "at the same time" when the locality collects another type of "locality's taxes."  Code § 58.1-3965.2(ii).

Additionally, such an ordinance, as pertaining to special assessments, would bring the locality's collection of special assessments under the umbrella of Article 4 of Chapter 39 of Title 58.1.  Such an ordinance would authorize the sale of the subject real estate to collect a special assessment under Code § 58.1-3965, which, as addressed, is not permitted by the plain language of Code § 15.2-5158(A)(5).  Code § 58.1-3965.2(ii).

D.    The City's Suit Against CVAS 2: Collection Of Delinquent Real Estate Taxes

Having laid out the statutory framework relevant to the City's suit, we now turn to whether the circuit court erred in entering the decree of sale.

14

The City's suit against CVAS 2 sought, in part, collection of delinquent real estate taxes. As discussed, the sale of real estate for the collection of delinquent real estate taxes by the City is governed by Code § 58.1-3965. The earliest a suit can be brought to collect outstanding real estate taxes is the December 31 two years following the anniversary of when the taxes became due. Code § 58.1-3965(A). The City has not passed an ordinance under Code § 58.1-3965.1 reducing this time requirement to the December 31 one year following the anniversary of when the taxes became due.

CVAS 2's delinquent real estate taxes date back to the 2012 fiscal year. The City's local ordinances provide that its fiscal year ends on June 30, and that all real estate taxes for any given fiscal year are due in two installment payments, the first on November 15 and the second on May 15. Fredericksburg City Code §§ 2-491; 70-93. The City has further explained to this Court that its fiscal year ends prior to the end of the calendar year, so that the 2012 fiscal year began on July 1, 2011 and ended on June 30, 2012. Thus, CVAS 2's first delinquent installment payment on its 2012 taxes occurred on November 15, 2011.

The December 31 two years following the anniversary of November 15, 2011 is December 31, 2013. Thus, the City's suit, filed on June 13, 2013, to collect those delinquent real estate

15

taxes was premature and requires dismissal of the City's complaint as to the delinquent real estate taxes.  See Code § 58.1-3965(A).

A suit to sell real estate to collect delinquent taxes on that property is purely a creature of statute.  See Lester Group, Inc. v. Little, 238 Va. 54, 57, 381 S.E.2d 3, 5 (1989) ("The power of a governmental entity to sell land for non-payment of taxes is not a common law power, but arises entirely from statute." (internal quotation marks and citation omitted)).  A party's ability to "enforce" such a statutory right "rest[s] upon compliance with the statute."  Isle of Wight Materials Co. v. Cowling Bros., 246 Va. 103, 105, 431 S.E.2d 42, 43 (1993) (internal quotation marks and citation omitted).  Because the City did not strictly comply with the time period in Code § 58.1-3965(A) allowing for such a suit to be brought, the City had no authority under that statute to bring suit to sell CVAS 2's real estate as a means to collect delinquent real estate taxes dating back to November 15, 2011.  See Lester Group, 238 Va. at 57, 381 S.E.2d at 5.

E.    The City's Suit Against CVAS 2: Collection Of Delinquent "Special Assessments"

The City's suit against CVAS 2 also sought, in part, collection of delinquent "special assessments."

16

1. <u>Special Taxes Are Different From Special Assessments</u>

Despite the City and CVAS 2 repeatedly acknowledging that the City was seeking to collect special assessments, both parties argued before the circuit court whether CVAS 2's real estate could be sold under Code § 15.2-5158(A)(3), which governs collection of delinquent <u>special taxes</u>, as opposed to Code § 15.2-5158(A)(5), which governs collection of delinquent <u>special assessments</u>. And the circuit court, citing Code § 15.2-5158 in support of its authority to enter the decree of sale, necessarily relied upon Code § 15.2-5158(A)(3) because, as previously addressed, Code § 15.2-5158(A)(5) does not provide authority to sell real estate.

This confusion between special taxes and special assessments, and what statutory provisions are applicable to each type of obligation, persists on appeal. In briefs submitted to this Court, the City now refers to the delinquent special assessments as "special tax assessments," and argues that Code § 15.2-5158(A)(3) remains the governing statute. For its part, CVAS 2 has resisted this change in nomenclature and continues to assert in briefs submitted to this Court that the special assessments were indeed special assessments and not

17

special taxes, but has corrected its error and now argues that special assessments are governed by Code § 15.2-5158(A)(5).[5]

During oral argument, the City assured this Court that no practical difference exists between special taxes and special assessments.  We disagree.  The General Assembly gave these words particular and fixed meanings in the statutory scheme pertaining to community development authorities, and we must give different effect to these different statutory provisions. PKO Ventures, LLC v. Norfolk Redevelopment & Hous. Auth., 286 Va. 174, 183, 747 S.E.2d 826, 831 (2013).

Longstanding jurisprudence has distinguished between special taxes and special assessments.  See 1 William Herbert Page & Paul Jones, A Treatise on the Law of Taxation by Local and Special Assessments § 4, at 4 (1909) (defining a special assessment, when used in this context, as "a charge upon

---

[5] Of course, judicial estoppel prohibits a party "from taking inconsistent positions within a single action."  Lofton Ridge, LLC v. Norfolk S. Railway, 268 Va. 377, 381-82, 601 S.E.2d 648, 650-51 (2004).  However, a party cannot concede the law.  Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990).  Further, a party's mistaken belief as to what statutes govern a particular set of facts does not bind this Court on appeal, nor does such an error prohibit this Court from establishing how a statutory scheme correctly operates or from applying the correct statutes to the set of facts before it. See Virginia Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 388-89, 757 S.E.2d 1, 10 (2014); Wright v. Commonwealth, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009); see also, e.g., PS Business Parks, L.P. v. Deutsch & Gilden, Inc., 287 Va. 410, 420-22, 758 S.E.2d 508, 513-14 (2014).

property, imposed by proper authority, usually in return for special benefits conferred upon such property by an improvement of a public character for the expense of making which the assessment is levied"); id. § 7, at 11-13 (further defining what constitutes a special assessment); id. § 35, at 59-62 (distinguishing a tax, which is a "recurring charge" that "is levied for the purpose of raising revenue for paying the expenses of the government," from a special assessment, which is only levied "occasionally" and for purposes of paying for the "special benefits conferred upon" the property owner); id. § 50, at 86 (noting that one definition of "special tax" is "that of a tax analogous to the general tax, but devoted to a specific purpose and not to be used for the general expenses of the public corporation which levies it").

In the context of community development authorities, the General Assembly has acted in accordance with this longstanding law by distinguishing between a special tax and a special assessment. On the one hand, a special tax must come as an "annual[]" "[r]equest" by the community development authority for the locality to "levy and collect" that tax so as to "finance the services and facilities provided by" the development authority. Code § 15.2-5158(A)(3). On the other hand, a special assessment arises from "improvements" to "the services and facilities" provided "to abutting property within

the district" under the development authority's oversight, and must comply with "the laws pertaining to assessments under Article 2 ([Code §] 15.2-2404 et seq.)" as well as other expressly detailed requirements.  Code § 15.2-5158(A)(5).[6]

_____

[6] Justice McClanahan correctly observes that Code § 15.2-5158(A)(5) mentions both "assessments" and "taxes."  However, a close reading of this statutory provision reveals that the reference to "taxes" is inadvertent and does not alter our conclusion that special assessments under Code § 15.2-5158(A)(5) are treated differently from special taxes under Code § 15.2-5158(A)(3) and real estate taxes under Code § 58.1-3965.

Code § 15.2-5158(A)(5) contains five sentences.  The first, third, fourth, and fifth sentences are all substantive provisions and provide, respectively:  that every community development authority has the power to request imposition of special assessments; how special assessments shall be made effective; how special assessments shall be implemented; and how revenues collected from special assessments shall be disposed.  In each of these sentences, the General Assembly uses only the terms "special assessment" or "assessments."

The second sentence of Code § 15.2-5158(A)(5) is not substantive, but establishes certain requirements for "[a]ll assessments [imposed] pursuant to this section."  (Emphasis added.)  As part of those requirements, the second sentence first references "the laws pertaining to assessments under Article 2 ([Code] § 15.2-2404 et seq.) of Chapter 24," and then provides three additional requirements.  In setting forth these three additional requirements, Code § 15.2-5158(A)(5) refers to "taxes or assessments."

This passing reference to "taxes" in the second sentence does not alter the scope of Code § 15.2-5158(A)(5).  The second sentence provides requirements only for "[a]ll assessments," not taxes, and does not modify the fact that the other four sentences apply only to assessments.  Further, the reference to "taxes" is inadvertent.  The first phrase of the second sentence invokes Article 2 of Chapter 24, Code § 15.2-2404 et seq.  In turn, Article 2 of Chapter 24 pertains to taxes and assessments for local improvements as imposed by localities, unrelated to community development associations.  In incorporating the requirements of Article 2 of Chapter 24 to

20

2.   Determining Whether An Obligation Is A Special Tax Or
     Special Assessment Is A Mixed Question Of Law And Fact

     Determining whether a particular obligation levied against

real estate is a special tax or a special assessment under the

Code requires evaluating the specific obligation imposed

relative to the different statutory definitions.  Recognizing

this as the correct analysis, we respectfully but necessarily

disagree with our colleagues in concurrence and dissent who

contend that the City's resolution governing the CDA answers

---

apply only to special assessments imposed under Code § 15.2-
5158(A)(5), the General Assembly inadvertently included the
"tax" term from Article 2 of Chapter 24 when setting forth the
three additional requirements that special assessments must
satisfy when imposed pursuant to Code § 15.2-5158(A)(5).
     Thus, Code § 15.2-5158(A)(5) only governs special
assessments requested by a community development authority.
Code § 15.2-5158(A)(3) only governs special taxes requested by
a community development authority.  Code § 58.1-3965 only
governs taxes on real estate.  These three provisions govern
three different types of obligations.  Although the dividing
line between these types of obligations is not always clear or
defined with the most precise language, the General Assembly
has enacted a scheme whereby different obligations are governed
by different procedures.  This is an exceptional situation in
which we must recognize that the word "tax," as used in a
portion of a single sentence of Code § 15.2-5158(A)(5), appears
to be a legislative scrivener's error.  Our holding is
necessary to avoid the absurd result of dismantling the General
Assembly's carefully crafted statutory scheme distinguishing
between these different obligations.  Idoux, 279 Va. at 554,
691 S.E.2d at 776 ("[N]o part [of a statute] will be treated as
meaningless unless absolutely necessary." (emphasis added));
Covel v. Town of Vienna, 280 Va. 151, 158, 694 S.E.2d 609, 614
(2010) (construing a statute so that the law is "incapable of
operation" is an absurd result (internal quotation marks
omitted)); see also Johnson v. United States, 529 U.S. 694,
723-24 (2000) (Scalia, J., dissenting).

21

the question.  To the extent a locality's resolution or ordinance purports to limit a community development authority's powers, such a fact only addresses whether the relevant governmental authority acted within its scope of authority when levying a particular obligation.  It does not answer the wholly separate question of what that obligation is under the Code.

As such, whether an obligation is a special tax or a special assessment for purposes of the Code is a mixed question of law and fact.  See Smyth County Cmty. Hosp. v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000).  The factual predicate for such a determination in this case is poorly developed.  The circuit court – understandably, in light of the parties' confusion of the issue – failed to make factual findings germane to whether the obligation in question is a special tax or a special assessment.  Moreover, the parties did not brief the issue before the circuit court, and provided only a cursory discussion of the issue before this Court.

Considering the insufficiency of the record in this regard, and the parties' continuing disagreement about this fundamental aspect of the case, we decline to make a factual finding ourselves.  See Bailey, 288 Va. at 181, 762 S.E.2d at 773 ("[W]e are a court of review, not of first view." (internal quotation marks and citation omitted)).  However, we need not decide the issue, nor must we remand the case to develop such

22

factual findings, because the circuit court erred as a matter of law in entering the decree of sale regardless of whether the delinquent special assessments are categorized as special taxes or special assessments under the Code. See D.R. Horton, Inc. v. Board of Supervisors, 285 Va. 467, 471-75, 737 S.E.2d 886, 888-90 (2013) (addressing each of the appellant's alternative legal arguments as applied to the same set of facts).

3.    Analysis Of The "Special Assessments" As Special Taxes

The collection of a delinquent "special tax" on behalf of a community development authority is governed by Code § 15.2-5158(A)(3). A suit to collect outstanding special taxes must be brought "at the same time" as when "the locality's taxes are collected." Id.

The City chose delinquent real estate taxes to be the type of "locality's taxes" to which the collection of these particular delinquent special taxes was coupled by operation of Code § 15.2-5158(A)(3). Consequently, when those special taxes may be collected is dictated by when the City could collect such delinquent real estate taxes. And as established, the City could not bring suit under Code § 58.1-3965(A) to sell CVAS 2's real estate in order to collect the delinquent real estate taxes, which dated back to November 15, 2011, until December 31, 2013. Further, the City has not adopted an ordinance pursuant to Code § 58.1-3965.2(ii) allowing for it to

23

expedite and collect delinquent special taxes independent from its collection of another type of delinquent "locality's taxes."  Thus, the City could not bring suit on June 13, 2013 to collect the delinquent special assessments dating back to the 2009 fiscal year, even if they are in fact special taxes under the Code.[7]

A suit to sell real estate to collect special taxes on that property is purely a creature of statute.  See Lester Group, 238 Va. at 57, 381 S.E.2d at 5.  A party's ability to "enforce" such a statutory right "rest[s] upon compliance with the statute."  Isle of Wight Materials, 246 Va. at 105, 431 S.E.2d at 43 (internal quotation marks and citation omitted).  Thus, because the City did not strictly comply with the time period in Code §§ 15.2-5158(A)(3) and 58.1-3965(A) allowing for

---

[7] Justice Powell contends that the delinquent special taxes could have been collected under Code § 58.1-3965, which is a general provision governing "any taxes on any real estate," as a matter of course.  This reading unnecessarily renders meaningless the "at the same time and in the same manner" language of Code § 15.2-5158(A)(3), which is a specific provision governing the collection of special taxes.

Absent an ordinance adopted pursuant to Code § 58.1-3965.2(ii), a special tax can only be collected "at the same time" when another type of "locality's tax[]" is collected.  Code § 15.2-5158(A)(3).  A special tax cannot be collected independent of collecting another "locality's tax[]" simply by invoking Code § 58.1-3965.  See Idoux, 279 Va. at 554, 691 S.E.2d at 776 ("[N]o part [of a statute] will be treated as meaningless unless absolutely necessary."); Peerless Ins. Co. v. County of Fairfax, 274 Va. 236, 244, 645 S.E.2d 478, 483 (2007) (holding that specific statutes prevail over general statutes).

24

such a suit to be brought, the City had no authority under those statutes to bring suit to sell CVAS 2's real estate as a means to collect delinquent special taxes.  See Lester Group, 238 Va. at 57, 381 S.E.2d at 5.

4.   Analysis Of The "Special Assessments" As Special Assessments

The collection of a delinquent "special assessment" on behalf of a community development authority is governed by Code § 15.2-5158(A)(5).  Delinquent special assessments may be collected as a lien upon the property if the locality has passed an ordinance allowing for special assessments to be made effective in such a manner.  Id.  As discussed, however, the plain language of Code § 15.2-5158(A)(5) does not invoke the authority under Code § 58.1-3965(A) to sell real estate subject to a special assessment.  And the City has not adopted an ordinance pursuant to Code § 58.1-3965.2(ii) allowing for it to file suit to have CVAS 2's real estate sold to collect delinquent special assessments pursuant to Article 4 of Chapter 39 of Title 58.1, Code § 58.1-3965 et seq.

A suit to collect delinquent special assessments is purely a creature of statute.  See Lester Group, 238 Va. at 57, 381 S.E.2d at 5.  A party's ability to "enforce" such a statutory right "rest[s] upon compliance with the statute."  Isle of Wight Materials, 246 Va. at 105, 431 S.E.2d at 43 (internal

25

quotation marks and citation omitted).  The City, being the party asserting the statutory right which has been challenged, has the burden of proving compliance with the statutory scheme. See Moore v. Commonwealth, 155 Va. 1, 15, 155 S.E. 635, 639 (1930); see also, e.g., Glasser & Glasser, PLC v. Jack Bays, Inc., 285 Va. 358, 369-71, 741 S.E.2d 599, 605 (2013) (party asserting the statutory right to enforce a mechanic's lien has the burden of naming all necessary parties so as to comply with the statutory scheme).

CVAS 2 challenged the City's ability to file suit to collect the delinquent special assessments, and the City failed to establish that it complied with the statutes actually pertaining to the collection of special assessments.  Because the City has not shown that it has strictly complied with Code §§ 15.2-5158(A)(5) or 58.1-3965.2 allowing for it to bring suit to collect delinquent special assessments, the City has not established authority under those statutes to bring suit to sell CVAS 2's real estate as a means to collect the delinquent special assessments.  See Lester Group, 238 Va. at 57, 381 S.E.2d at 5.

## III. Conclusion

The General Assembly has established a comprehensive statutory scheme affording localities, local governing bodies, and community development associations the ability to levy and

collect real estate taxes, special taxes, and special assessments owed to a governmental entity by a property owner, including the right to sell the subject real estate.  However, the governmental authority must act pursuant to, and in compliance with, that statutory scheme in order to bring suit to collect such delinquent obligations.

We reverse the circuit court's judgment because the City failed to act in compliance with the relevant statutory provisions.  With the City having no basis for relief under those statutes, the circuit court lacked authority to order the sale of CVAS 2's real estate.  We will vacate the decree of sale and dismiss the City's suit against CVAS 2.

<u>Reversed, vacated, and dismissed.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

While I agree with the majority opinion on the initial jurisdictional issue, I disagree with it on the merits and would affirm the circuit court.  First, as addressed in the concurring opinion, it is undisputed that the subject delinquent obligation on CVAS 2's real property is a "special assessment" under Code § 15.2-5158(A)(5). Second, the special assessment is a form of taxation on real estate, based on both the express language of subsection (A)(5) of the statute (describing the obligation alternatively as a levy of "taxes or

27

assessments") and the treatment of the subject by this Court. Third, because the special assessment on CVAS 2's property is a real estate tax, and it is more than two years past due, the property can be sold for the delinquent taxes pursuant to Code § 58.1-3965, as the circuit court held.

CVAS 2 admitted in its answer to the City's complaint that the levy was a special assessment, which is exclusively controlled by subsection (A)(5) of Code § 15.2-5158 (not subsection (A)(3) of the statute). Moreover, the City's September 13, 2005 resolution governing the Celebrate Virginia South Community Development Authority ("CDA") expressly authorized the imposition of special assessments pursuant to Code § 15.2-5158(A)(5), not a "special tax" under subsection (A)(3) of the statute. The resolution then sets forth the methodology to be used in levying the special assessment on "the parcels [of land] in the CDA so that there is a rational relationship between the assessments and the benefit received from public improvements by each parcel." This provision is in keeping with the express requirement under Code § 15.2-5158(A)(5) that such "taxes or assessments may be imposed upon abutting land which is later subdivided in accordance with the terms of the ordinance forming the district, in amounts which do not exceed the peculiar benefits of the improvements to the abutting land as subdivided." In this case, the "taxes or

28

assessments" levied pursuant to subsection (A)(5) were for the purpose of financing the debt on bonds issued by the CDA to fund its improvements in the district.  Id.

As indicated above, the "special assessment," which is the sole subject of Code § 15.2-5158(A)(5), is described therein as the levy of "taxes or assessments."[1]  In so describing the

---

[1] Code § 15.2-5158(A)(5)states as follows:

A. Each community development authority created under this article, in addition to the powers provided in Article 3 (§ 15.2-5110 et seq.) of Chapter 51 of this title, may:

. . . .

5. Finance the services and facilities it provides to abutting property within the district by special assessment thereon imposed by the local governing body. All assessments pursuant to this section shall be subject to the laws pertaining to assessments under Article 2 (§ 15.2-2404 et seq.) of Chapter 24; provided that any other provision of law notwithstanding, (i) the taxes or assessments shall not exceed the full cost of the improvements, including without limitation the legal, financial and other directly attributable costs of creating the district and the planning, designing, operating and financing of the improvements which include administration of the collection and payment of the assessments and reserve funds permitted by applicable law; (ii) the taxes or assessments may be imposed upon abutting land which is later subdivided in accordance with the terms of the ordinance forming the district, in amounts which do not exceed the peculiar benefits of the improvements to the abutting land as subdivided; and (iii) the taxes or assessments may be made subject to installment payments for up to 40 years in an amount calculated to cover principal, interest and administrative costs in connection with any financing by the authority, without a penalty for prepayment. Notwithstanding any other provision of law, any assessments made pursuant to this section may be made effective as a lien upon a specified date, by ordinance, but such assessments may not thereafter be modified

---

special assessment, the legislature did not establish two different schemes under subsection (A)(5) for imposing a local levy on properties located within a particular district in order to fund the improvements undertaken by a community development authority. Rather, subsection (A)(5) makes provision for financing such improvements only through one type of levy specifically tied to the costs of the improvements and the "peculiar" benefits conferred upon the properties by those improvements - whether the levy is called a tax or an assessment.[2] Id.; see also Code § 15.2-2404 (establishing

---

in a manner inconsistent with the terms of the debt instruments financing the improvements. All assessments pursuant to this section may also be made subject to installment payments and other provisions allowed for local assessments under this section or under Article 2 of Chapter 24. All revenues received by the locality pursuant to any such special assessments which the locality elects to impose upon request of the development authority shall be paid over to the development authority for its use under this chapter, subject to annual appropriation, and may be used for no other purposes.

(Emphasis added.)

[2] By contrast, the local levy authorized under subsection (A)(3) of Code § 15.2-5158 as a "special tax" to finance the services and facilities provided by the community development authority contains no limit based on the benefit of the authority's improvements. Rather, it sets a limit that is tied to the assessed fair market value of the taxable real estate in the district ($.25 per $100 of assessed fair market value of each parcel).
    Subsection (A)(3) is not controlling in this case, in light of the provisions and application of subsection (A)(5). I note my agreement, however, with the concurring opinion's interpretation of the phrase "at the same time and in the same

similar authority for local governments to impose "taxes or assessments" on properties located in a particular area in order to fund a variety of permitted improvements that would specifically benefit those properties).

The description of the special assessment authorized under Code § 15.2-5158(A)(5) as the levy of "taxes or assessments" is consistent with the general definition of the term "special assessment": "[t]he assessment of a tax on property that benefits in some important way from a public improvement." Black's Law Dictionary 140 (10th ed. 2014) (emphasis added).

In City of Richmond v. Richmond-Petersburg Turnpike Authority, 204 Va. 596, 600, 132 S.E.2d 733, 736 (1963), this Court recognized that a special assessment like the one at issue here is most assuredly a tax on real estate. There, the Richmond-Petersburg Turnpike Authority contended that, as a political subdivision of the Commonwealth, it was exempt from special assessments made against it by the City of Richmond for

---

manner" in subsection (A)(3), which is the linchpin of the majority's analysis. More specifically, I agree that this phrase is not in reference to Code § 58.1-3965, which sets forth the authority and outlines the procedure for a locality to effect a foreclose sale for delinquent real estate taxes. When the phrase is read in a proper context, it is apparent that the phrase only addresses the time and manner in which the "special tax" is to be collected "annually" by the locality as part of its routine procedure of billing and receiving payment of taxes - not the procedure governing a foreclosure sale when the taxes are delinquent. Code § 15.2-5158(A)(3).

31

the construction of sidewalks abutting the Authority's properties. The City countered that the Authority was only exempt from taxes, whereas the assessments at issue were not taxes. Id. at 597, 132 S.E.2d at 733-34. In holding for the Authority, the Court explained that "[c]ourts and text writers, generally, make a distinction between special assessments, or special taxes to pay for local improvements, and general tax levies for purposes of carrying on the government." Id. at 598, 132 S.E.2d at 734. In that sense, "[t]he word 'taxes,'" in reference to general taxes, "is not synonymous with 'assessments.'" Id. The Court nonetheless concluded that "[t]he levies here, whether they be called taxes or assessments, were taxes - maybe a special kind of taxes - that is, local taxes assessed and imposed as liens upon real estate of a political subdivision of the Commonwealth of Virginia."[3]

---

[3] This distinction between special assessments and general taxes, as relates to the improvements for which they are levied, has been well summarized as follows:

There is a distinction between public improvements, which benefit the entire community, and local improvements, which benefit particular real estate or limited areas of land. The latter improvements are usually financed by means of special, or local, assessments. These assessments are, in a certain sense, taxes. But an assessment differs from a general tax in that an assessment is levied only on property in the immediate vicinity of some local municipal improvement and is valid only where the property assessed receives some special benefit differing from the benefit that the general public enjoys. Robert Kratovil, Real Estate Law § 690, at 465 (6th ed. 1974).

Id. at 600, 132 S.E.2d at 736 (emphasis added).  See City of Roanoke v. Fisher, 193 Va. 651, 654, 70 S.E.2d 274, 277 (1952) (identifying a "special assessment" to finance the cost of local improvements as "in reality a tax"); see also Illinois Central R.R. Co. v. Decatur, 147 U.S. 190, 197 (1893) (explaining distinction between "general taxes" as one form of levy on property and "special taxes or special assessments" as another, "both of [which] are properly called taxes"); City of Beckley v. Wolford, 140 S.E. 344, 345  (W. Va. 1927) (noting that it is "thoroughly established" that "special assessments are a species of taxation, and the authority to enforce them is a branch of the taxing power") (internal quotation marks and citations omitted).  Accord: French v. Barber Asphalt Paving Co., 181 U.S. 324, 343-44 (1901)(adopting Judge Dillon's synthesis that the levy of "special assessments" is "a branch of the taxing power, or included within it"); Parsons v. District of Columbia, 170 U.S. 45, 55-56 (1898)(same).[4]

---

[4] In light of such authority, it is understandable why the legislature chose to describe the "special assessment" under Code § 15.2-5158(A)(5) as a levy of "taxes or assessments." See also Code § 15.2-2404.  Completely ignoring this line of case law, however, the majority merely asserts that the legislature's description is "inadvertent."  Moreover, in doing so, the majority overlooks the salient point recognized by these cases that a special assessment like the one here is one form of a real estate tax - even if the legislature had not included the word "taxes" in describing it.

Finally, because the special assessment under Code § 15.2-5158(A)(5) is a tax on real estate, it falls squarely within the purview of Code § 58.1-3965 for its collection by foreclosure sale when delinquent. Code § 58.1-3965(A) states, in relevant part, that "[w]hen any taxes on any real estate in a locality are delinquent on December 31 following the second anniversary of the date on which such taxes have become due . . . such real estate may be sold for the purpose of collecting all delinquent taxes on such property." (Emphasis added.) In this case, it is undisputed that CVAS 2's special assessment was more than two years past due. Accordingly, CVAS 2's property, on which the City levied the special assessment, was subject to a foreclosure sale for the delinquent taxes under Code § 58.1-3965.

For these reasons, I would affirm the circuit court in ordering the sale of CVAS 2's property pursuant to Code § 58.1-3965, and remand the case to the court for further proceedings.

JUSTICE POWELL, with whom JUSTICE GOODWYN joins, concurring.

Although I agree with the outcome of this case, I write separately because I disagree with the majority with regard to its analysis of Code § 15.2-5158(A)(3) and Code § 58.2-3965.

As an initial matter, in my opinion the majority applies an incorrect standard of review in its analysis of the

34

ordinance at issue in this case.  The majority relies on Smyth County Community Hospital v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000), where this Court held that "application of the requirements of [a statute] is a mixed question of fact and law."  The issue in Smyth County Community Hospital was whether a property was used in a manner that "immediately and directly promote[d] the charitable purposes of the hospital," thereby exempting that property from taxation. Id.  In other words, it was necessary for us to examine the facts before we could determine whether the law applied.  The question in the present case, however, is not whether the ordinance applies to CVAS 2's property; rather, the question is what type of obligation is created by the ordinance.

In support of its holding, the majority explains that "[d]etermining whether a particular obligation levied against real estate is a special tax or a special assessment under the Code requires evaluating the specific obligation imposed relative to the different statutory definitions."  It is unclear, however, how such a determination requires any form of factual predicate.  Indeed, the majority fails to explain what factual findings, if any, a trial court could make that would be germane to the issue of whether the ordinance created a special tax or a special assessment.

35

In my opinion, determining the meaning of a statute or ordinance relative to other statutory definitions is the very definition of statutory interpretation. Accordingly, the determination of what type of obligation this ordinance creates is clearly an issue of statutory interpretation subject to de novo review by this Court. See Renkey v. County Bd., 272 Va. 369, 373, 634 S.E.2d 352, 355 (2006) (recognizing that interpretation of an ordinance "is a pure question of law subject to de novo review by this Court").

Here, the plain language of the relevant ordinance unequivocally establishes that the obligation levied on the property is a special assessment. The ordinance consistently refers to the obligation as a special assessment and never once refers to it as a tax of any sort. Further, the ordinance specifically provides that the debt incurred by the CDA will be "covered by . . . special assessments pursuant to Virginia Code § 15.2-5158(A)(5)." The ordinance goes on to explain that the special assessments will levy a lien upon the property. See City of Fredericksburg Resolution No. 05-87 ("[A]ll real property in the District may be subject to the lien of a special assessment to be established and levied by this Resolution") (emphasis added). Notably, under Code § 15.2-5158(A)(5), only special assessments may be made effective as a lien upon property to be paid in installments.

Thus, it is readily apparent that the ordinance at issue in the present case created a special assessment. Accordingly, the majority should have limited its analysis in this case to the application of Code § 15.2-5158(A)(5). Indeed, I agree with the majority's application of Code § 15.2-5158(A)(5). However, I believe that the majority's analysis of Code § 15.2-5158(A)(3), which only applies to special taxes, is unnecessary and is, therefore, obiter dicta. See Harmon v. Peery, 145 Va. 578, 583, 134 S.E. 701, 702 (1926) ("Obiter dicta are such opinions uttered by the way, not upon the point or question pending, . . . as if turning aside . . . from the main topic of the case to collateral subjects." (citations and internal quotation marks omitted)).

Notwithstanding the fact that I believe the majority's analysis of Code § 15.2-5158(A)(3) is unnecessary, I feel compelled to address the majority's application of the statute. As an initial matter, I agree with the majority's basic premise that, as used in this statute, "at the same time" establishes when a special tax is collected and "in the same manner" establishes how a special tax is collected. I further agree with the majority that "when a special tax is collected is determined by the time when 'the locality's taxes' are collected" and "how a special tax is collected is determined by the manner in which 'the locality's taxes' are collected."

37

Thus, under this logic, Code § 15.2-5158(A)(3) allows a locality to collect special taxes when (i.e., "at the same time") and how (i.e., "in the same manner") that locality's other taxes are collected.

However, I believe the majority's analysis goes awry when it creates a "prerequisite for collecting special taxes." Nothing in the statute indicates any such prerequisite. Indeed, such an interpretation adds an additional procedural requirement to the collection of special taxes, thus running counter to the previously established definitions of "at the same time" and "in the same manner." Rather, the statute merely states that the locality must use the same procedural and temporal provisions that govern the collection of its other taxes.[1]

Furthermore, the majority fails to give proper weight to the plain language of Code § 58.1-3965(A). Special taxes under Code § 15.2-5158(A)(3) are levied on "taxable real property within the development authority's jurisdiction to finance the services and facilities provided by the authority." Code § 58.1-3965(A) applies "[w]hen any taxes on any real estate in

_____

[1] I do, however, agree with the majority that a locality is allowed to choose which of its taxes will provide the necessary procedural and temporal provisions for the collection of special taxes.

38

a locality are delinquent on December 31 following the second anniversary of the date on which such taxes have become due." (Emphasis added.)  As the special taxes described in Code § 15.2-5158(A)(3) are clearly taxes on real estate, Code § 58.1-3965(A) may be utilized to collect any sufficiently delinquent special taxes owed on the property, independent of whether there are any other delinquent real estate taxes due.[2]

---

[2] Contrary to what the majority states, my interpretation of Code § 58.1-3965(A) does not render meaningless the "at the same time and in the same manner" language of Code § 15.2-5158(A)(3).  Code § 58.1-3965(A) does not apply to the general collection of taxes on real estate; it only applies when certain conditions are met, i.e., when the taxes on real estate are sufficiently delinquent.  Code § 15.2-5158(A)(3), on the other hand, only applies to the general collection of special taxes; it makes no reference to the collection of delinquent special taxes.  Thus, the two statutes can be read harmoniously: Code § 15.2-5158(A)(3) applies to the normal collection of special taxes and Code § 58.1-3965(A) applies when those special taxes become delinquent.  See, e.g., L.F. v. Breit, 285 Va. 163, 178, 736 S.E.2d 711, 719 (2013)("[T]wo statutes must be read 'as a consistent and harmonious whole to give effect to the overall statutory scheme.'")(quoting Bowman v. Concepcion, 283 Va. 552, 563, 722 S.E.2d 260, 266 (2012)).  See also City of Lynchburg v. English Constr. Co., 277 Va. 574, 580, 675 S.E.2d 197, 200 (2009)(applying this doctrine to multiple statutes governing collection of taxes by localities).

Furthermore, I note that nowhere does Code § 15.2-5158(A)(3) state that "a special tax can only be collected 'at the same time' when another type of 'locality's tax[]' is collected," as the majority insists.  (Emphasis added.)  Indeed, such an approach necessarily renders the introductory clause of Code § 58.1-3965.2 meaningless.  Code § 58.1-3965.2 specifically references Code § 58.1-3965 as providing the authority to initiate proceedings to sell property to collect delinquent special taxes.  Code § 58.1-3965.2 does not require that the authority provided by Code § 58.1-3965 be exercised in conjunction with Code § 15.2-5158(A)(3).  Thus, it is readily

The majority's holding with regard to special taxes results in a curious taxing scheme.  It makes no sense to allow a property owner to disregard special taxes with impunity, so long as he continues to pay the requisite "locality's taxes" on time.  Indeed, it is unclear how a locality could ever collect delinquent special taxes, absent the existence of the necessary "prerequisite" delinquent "locality's taxes."[3]

In my opinion, the ordinance unequivocally created a special assessment under Code § 15.2-5158(A)(5).  As I agree with the majority's analysis with regard to special assessments, I concur in the judgment reversing the decision of the trial court.  I disagree with the majority's further analysis of the case under Code § 15.2-5158(A)(3).  If, however, the obligations levied on the property had actually

---

apparent that the General Assembly did not intend for Code § 15.2-5158(A)(3) to be the sole method by which a locality could collect special taxes.

[3] Under the majority's interpretation of Code § 15.2-5158(A)(3), not even the eventual sale of the property would necessarily allow a locality to collect the delinquent special taxes unless the locality was also able to collect the prerequisite "locality's taxes" at the same time.  A particularly crafty property owner could time the sale of the property such that none of the prerequisite "locality's taxes" were due at the time of sale.  As there is nothing in Code § 15.2-5158(A)(3) that allows the locality to treat the delinquent special taxes as a lien upon the property, the locality is left with no way to collect the delinquent special taxes.

been special taxes under Code § 15.2-5158(A)(3), then, I would have affirmed the decision of the trial court.