# Richmond

## MEMORIAL HOSPITAL ASSOCIATION OF VIRGINIA, INC., ET AL. v. COUNTY OF WISE.

March 5, 1962.

Record No. 5367.

Present, All the Justices.

*Harold H. Bacon (Clyde Y. Cridlin; Val J. Mitch; John H. Mc-Manus; T. G. Dudley*, on brief), for the plaintiffs in error.

*W. T. Bowen (Kenneth P. Asbury; E. D. Vicars; Greear, Bowen, Mullins & Winston*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

This appeal resulted from an order denying the joint application of Memorial Hospital Association of Virginia, Inc., and Miners Memorial Hospital Association, Inc., for the correction of real estate and personal property taxes allegedly erroneously assessed by Wise county for the year 1956. Section 58-1145 *et seq.*, Code 1950. Petitioners alleged that the properties were exempt from taxation by virtue of § 183 of the Constitution of Virginia and § 58-12, Code 1950, as amended.

Memorial Hospital Association of Virginia, Inc., (now dissolved) by deed dated August 18, 1955, conveyed the real estate involved to Miners Memorial Hospital Association, Inc., but the deed was not recorded until July 25, 1956. Hence, the 1956 assessment was made in the name of the former. The latter had also acquired title to the personal property prior to January 1, 1956. Petitioners make no point of the fact that the tax was assessed in the name of Memorial Hospital Association of Virginia, Inc. The land and buildings were assessed at $180,480 and the personal property was assessed at $12,000. A total tax of $7,704 was paid the county under protest for that year.

The Town of Wise, where the properties are located, had likewise assessed the properties for taxation. Petitioners filed a separate application for a correction of these alleged erroneous assessments of taxes. By agreement, the two applications were heard together, and a separate order was entered on each application. It was stipulated that a decision in this appeal will control the judgment rendered on the application pertaining to the assessments by the Town of Wise.

The sole question presented is whether the real and personal property owned by Miners Memorial Hospital Association, Inc., was exempt from taxation under § 183 of the Constitution of Virginia and § 58-12, Code 1950, as amended.

Section 183 of the Constitution of Virginia provides:

"Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

\*　　　\*　　　\*　　　\*　　　\*

"(e) Real estate belonging to, actually and exclusively occupied and used by, and personal property, including endowment funds, belonging to Young Men's Christian Associations, and other similar religious associations, orphan or other asylums, reformatories, hospitals and nunneries, conducted not for profit, but exclusively as charities, also parks or playgrounds held by trustees for the perpetual use of the general public."

Section 58-12 of the Code, as amended, reads:

"The following property shall be exempt from taxation, State and local, including inheritance taxes:

\*　　　\*　　　\*　　　\*　　　\*

"(5) Real estate belonging to and actually and exclusively occupied and used by, and personal property \* \* \* belonging to \* \* \* hospitals \* \* \* conducted not for profit but exclusively as charities, (which shall be deemed to include hospitals operated by nonstock corporations not organized or conducted for pecuniary profit but which may charge persons able to pay in whole or in part for their care and treatment), \* \* \*."

Miners Memorial Hospital Association, Inc., hereinafter called Miners Memorial, was chartered as a non-stock, non-profit corporation under the laws of the Commonwealth of Kentucky. It was organized by United Mine Workers of America Welfare and Retirement Fund of 1950, hereinafter called the Fund, primarily to provide hospital facilities for the Fund's program. Miners Memorial constructed, and now owns and operates Wise Memorial Hospital in the Town of Wise and nine other memorial hospitals in Kentucky and West Virginia. The cost of construction was financed by loans, secured by first deeds of trusts on the hospital properties, made by the Fund. The loan on Wise Memorial property was made on January 26, 1956, for $2,074,971, payable 20 years after date without interest and with the privilege of curtailing the obligation at any time prior thereto.

The Fund is an irrevocable trust created pursuant to Section 302 (c) (5) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. 186(c) (5). It originated by a trust instrument contained in the National Bituminous Coal Wage Agreement of 1950, entered into

between United Mine Workers of America and various producers of bituminous coal. At its inception the Fund was paid 30 cents a ton for such coal mined by those producers signatory to the contract. It is presently paid 40 cents per ton, and the Fund is operated by three trustees. One trustee is appointed by the union, another by the employers and the two trustees select the third.

Wise Memorial began operations in February 1956. It has 60 beds and employs about 140 persons, including 45 nurses. In addition to the hospital building, apartment units were erected on the premises which are rented to members of the staff. Certain physicians who treat hospital patients are rented office space in the hospital. The hospital operates a cafeteria on the premises for the use of employees, out-patients and visitors. It also operates a pharmacy for the use of both in-patients and out-patients. The income received is applied to the operating expenses of the hospital.

Wise Memorial was built primarily to provide hospital care for beneficiaries of the Fund. In order for a miner to be a beneficiary under the Fund, he must show that he is presently employed or was last employed in a classified job in coal mining by an operator signatory to the National Bituminous Coal Wage Agreement under which the operator is required to pay tonnage royalties, and that such employment was since the Fund was established. Widows and survivors of miners applying for benefits must show that the deceased miner was employed as above stated. An eligible beneficiary is given a card which entitles him to care and treatment at the hospital, and he is not required to pay for services rendered unless they are among a few exceptions for which benefits are not provided or there is a known liability of a third party, such as an employer under the Workmen's Compensation Act.

The hospital accepts patients other than beneficiaries of the Fund when its facilities are not required for the beneficiaries. Private patients are charged $30 a day. This is an all inclusive rate, but does not cover doctors fees. Usually the patient is required to deposit $60 upon entrance. Emergency cases are admitted without regard to their ability to pay. Between 85 and 90 percent of the patients are those who qualify for benefits under the Fund.

Under an agreement between the Fund and Miners Memorial, the Fund each month paid to Wise Memorial for the hospitalization of its beneficiaries the hospital's operating deficit for that period. The average cost per patient day at the hospital for Fund patients ex-

ceeded $30. During a twelve month interval $1,966.50 was charged off as uncollectible for services rendered to 21 non-beneficiary in-patients. The hospital has never made a profit on its operations.

■ There is no inherent exemption from taxation on hospitals. Immunity from taxation on their property must be provided for by the Constitution or legislative enactment not in conflict with the Constitution. Those claiming exemption have the burden of showing that the property comes within the exemption provisions. 51 Am. Jur., Taxation, § 633, p. 606.

Whether a hospital is charitable or otherwise may be determined not only from the purposes and powers provided for in its charter but also from the manner in which it is operated. *Danville Com. Hospital* v. *Thompson*, 186 Va. 746, 753, 43 S. E. 2d 882; *Memorial Hospital* v. *Oakes, Adm'x*, 200 Va. 878, 883, 108 S. E. 2d 388.

■ Section 183 (e) of the Constitution, *supra*, and § 58-12 of the Code, *supra*, make no requirement as to the method of procuring funds necessary to acquire property to effectuate the objectives. They provide: "Real estate belonging to, actually and exclusively occupied and used by, and personal property * * * belonging to * * * hospitals * * * conducted not for profit, but exclusively as charities * * *." Thus, the source and method of procuring the necessary funds to construct and maintain hospitals do not affect their charitable status. It is the destination of the funds or the use to which they are put that is the ultimate test for exemption of taxation.

■ On several occasions we have said that a non-stock, non-profit hospital, chartered to care for and treat the sick and injured persons, and which paid no dividends to anyone, did not lose its charitable status by charging patients who are financially able to pay. *Weston's Adm'x* v. *Hospital of St. Vincent, Etc.*, 131 Va. 587, 107 S. E. 785; *Memorial Hospital* v. *Oakes, Adm'x, supra; City of Richmond* v. *Hospital*, 202 Va. 86, 116 S. E. 2d 79.

In the recent case of *City of Richmond* v. *Hospital, supra*, we were called upon to decide whether Richmond Memorial Hospital and Richmond Eye Hospital, non-stock, non-profit corporations which paid no dividends to anyone, were exempt, under § 183(e) of the Constitution, from the payment of real estate taxes assessed by the City of Richmond. We held that the exemption applied to them. The hospitals were open to all persons and were operated with the expectation that all patients who were able to pay would pay for the services rendered. None was refused because of their inability

to pay. The City argued that there must be always a substantial or considerable amount of free service, which it said the hospitals were not rendering.

We held that § 183(e) "takes its color from the phrase 'not for profit', which delineates the character of the institution. Whether these hospitals are 'conducted not for profit, but exclusively as charities,' within the meaning of the constitutional provisions, depends not upon the number of patients who are treated free of charge, but the nature of the institutions and the purpose of their operations * * *." 202 Va. at page 91.

We further stated: "The legal interpretation of the phrase 'not for profit, but exclusively as charities', is not controlled by free service to the indigent or poor. Non-profit hospitals which are devoted to the care of the sick, which aid in maintaining public health, and contribute to the advancement of medical science, are and should be regarded as charities.

"Thus we hold that hospitals not operated for profit, which devote all of their funds exclusively to the maintenance of the institutions, are charities, and this is so irrespective of the fact that a majority of their patients are required to pay for services rendered." (Citing cases.) 202 Va. at page 94.

The charter of Miners Memorial Hospital Association, Inc., a non-stock, non-profit corporation, provides that its purposes, among other things, are "to establish, own and operate a general hospital or hospitals for the medical and surgical care and treatment of the sick and injured, including laboratories and other facilities or departments thereof, and from the operation of which no one shall enjoy any pecuniary profits, and which shall distribute no earnings or dividends to its promoters, incorporators, members, donors, contributors or any other person or persons whomsoever." It further provides that it is the intent of the incorporators that the Board of Directors may furnish services for all proper persons without charge who, in their opinion are unable to pay for such hospital service, but shall charge those persons who are able to pay a reasonable sum for services rendered.

The record shows that Wise Memorial charges patients who are not beneficiaries of the Fund $30 per day, which includes room, meals, special duty nurses, X-ray, laboratory work, oxygen, medicines, use of operating room, etc., but not medical fees; that on account of the size of the deficit the Fund has paid for each of its

beneficiaries a sum in excess of that amount; that there were accounts of the non-beneficiary patients charged off as uncollectible, and that the hospital received emergency patients without regard to their ability to pay. The record further shows that the hospital makes no profit from its operations, and that no one enjoys any pecuniary profits or receives any dividends. The fact that it receives income from the cafeteria, pharmacy, apartments and office space, which is applied to the cost of operating the hospital, is immaterial. That is so because, as the trial court found, the dominant purpose was not to obtain revenue or profit, but to promote the purposes for which the hospital was established and is incidental thereto. *Commonwealth v. Lynchburg Y.M.C.A.*, 115 Va. 745, 752, 80 S. E. 589; *Saint Francis Mem. Hosp. v. City & Co. of San Francisco*, 137 Cal. App. 2d 321, 290 P. 2d 275, 279.

Since Wise Memorial Hospital, owned and operated by Miners Memorial Hospital Association, Inc., is devoted to the care of the sick which aids in maintaining public health and contributes to the advancement of medical science, is not operated for a profit, and devotes all of its funds exclusively to the maintenance of the hospital, it is a charitable institution. We hold that the real estate and personal property in question belonging to Miners Memorial was used by it exclusively as a charity within the meaning of § 183(e) of the Constitution and § 58-12, Code 1950, as amended, and that it was erroneously assessed for taxation for the year 1956.

For the reasons stated, the judgment appealed from is reversed, the case remanded for the entry of an order in accordance with the views herein expressed.

*Reversed and remanded.*