SMYTH COUNTY COMMUNITY HOSPITAL

V.

TOWN OF MARION, ET AL.

Record No. 990766

March 3, 2000

Present: Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

---

[1] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

330

William R. Rakes; Gregory J. Haley (Leisa Kube Ciaffone; Gentry, Locke, Rakes & Moore, on briefs), for appellant.

Timothy W. Barbrow (John H. Tate, Jr.; Mark B. Fenyk; Joseph A. Vance, IV & Associates; Gwyn & Tate, on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider whether the trial court correctly determined that Smyth County Community Hospital (the Hospital) was not entitled to a tax exemption pursuant to Code § 58.1-3606(A)(5) for property it owned and operated as a nursing home.

The Hospital is a Virginia non-stock, not-for-profit, tax exempt, community hospital located in Smyth County, Virginia. It owns and operates Francis Marion Manor (the Manor), an intermediate care nursing facility. Smyth County and the Town of Marion (collectively "the County") assessed real and personal property taxes on the nursing home property for the 1993, 1994, and 1995 tax years. In October 1996, the Hospital filed a petition for declaratory judgment and for relief from those assessments, claiming that the nursing home property is exempt from taxation under § 58.1-3606(A)(5). Following a hearing, the trial court determined that the property was not exempt from taxation under that Code section, stating that the statute required that the property "be used as an integral part of the hospital operations" for application of the exemption. We awarded the Hospital this appeal. Because we conclude that the property in question is entitled to an exemption from taxation under § 58.1-3606(A)(5), we will reverse the judgment of the trial court.

While the parties disagree as to the conclusions to be drawn from the factual record, the facts themselves are not in dispute. The Hospital is a non-profit corporation organized "exclusively for charitable, scientific and educational purposes." It is exempt from state and federal taxation. Its Articles of Incorporation include as one of its purposes the establishment and maintenance of medical facilities of "all descriptions for the care of persons suffering from illnesses or disabilities which require in or outpatient care or attention." The facilities of the Hospital, according to its Articles of Incorporation,

include facilities for "nursing services." Another purpose of the Hospital is "[t]o participate . . . in any activity designed and carried on to promote the general health of the community."

The Manor has been in existence since 1967 and has always been owned by the Hospital. In 1987, the Manor relocated to the "hospital campus." The Hospital owns the property on which the Manor is situated, along with the equipment and facilities located within the Manor. Although the Manor has its own administrator, it is governed by the Hospital's board of directors and is not a separate legal entity through incorporation or otherwise.

Nursing services for the patients at the Manor are provided by nurses who are employees of the Hospital and who work at both the Hospital and the Manor. There are no employees at the Manor who are not employed by the Hospital.

The Manor does not have an operational checking account, but uses the Hospital's consolidated checking account. The Manor begins each year with no retained earnings. If, within a year, the Manor generates revenue exceeding its expenses, those funds are placed in a "hospital fund . . . for replacement of capital equipment or to meet other operating needs of the hospital long term."

On the Hospital's audited consolidated financial statements, the Hospital and the Manor are presented as a single entity. The notes to those reports for 1993, 1994, and 1995 refer to the Manor as a "wholly-owned subsidiar[y]" of the Hospital. Following the 1995 report, the consolidated financial reports refer to the Manor as an "operating division of the Hospital." The consolidated financial statements of the Hospital separate the Hospital and the Manor into two components in a double entry bookkeeping system, reflecting payments made by the Hospital for services and supplies provided at the Manor. One of the consolidated balance sheets reflects, as a liability of the Manor, a debt owed to the Hospital. None of the other departments of the Hospital, such as the emergency room, pharmacy, or radiology units are separated out on the Hospital balance sheet, and the Manor is the only unit whose financial performance is discussed regularly in the monthly report of the Hospital president.

The Manor and the Hospital are licensed by the Commonwealth of Virginia Department of Health but receive different types of licenses. The Hospital is listed as the "Legal Name of the Operator" on the Manor's licensing application. The Manor's application is signed by both its administrator and by the president and CEO of the Hospital. Both the Hospital and the Manor are accredited by the Joint

Commission on Accreditation of Health Care Organizations, but are accredited under separate standards.

As relevant here, § 58.1-3606(A)(5) exempts from taxation:

> Property belonging to and actually and exclusively occupied and used by . . . hospitals . . . conducted not for profit but exclusively as charities . . . .

To come within the exemption allowed by § 58.1-3606(A)(5), the Hospital has the burden of showing that the Manor belonged to the Hospital and was "actually and exclusively occupied and used by" the Hospital. *Memorial Hosp. Ass'n, Inc. v. County of Wise*, 203 Va. 303, 307, 124 S.E.2d 216, 219 (1962). The general rule is that an exemption from taxation is the exception and provisions exempting property from taxation must be strictly construed. The strict construction of this statute means that entitlement to the exemption must "appear clearly from the statutory provisions" relied upon. *Westminister Canterbury of Hampton Roads v. City of Virginia Beach*, 238 Va. 493, 501, 385 S.E.2d 561, 565 (1989). If there is any doubt concerning the exemption, the doubt must be resolved against the party claiming the exemption. *Id.*

The County asserts that this record supports its contention that the Manor is a separate entity and, therefore, is not actually and exclusively occupied and used by the Hospital, as required by the statute. This is true, according to the County, because the Hospital itself treats the Manor as a separate entity and because the Manor is licensed and inspected according to separate requirements. The evidence relied upon by the County for this assertion is the Hospital's treatment of the Manor in its financial statements. Unlike other departments of the Hospital, the Manor has been specifically referred to as a "wholly owned subsidiar[y]" of the Hospital and as a separate reporting entity for financial reporting purposes. We disagree with the conclusion advanced by the County based on this evidence.

While the evidence cited by the County, taken alone, may support an inference that the Manor is a separate entity, such an inference cannot overcome the undisputed evidence that the Manor is not a legal or operational entity separate and apart from the Hospital. The internal and external financial reporting forms may serve certain interests of the Hospital, but do not vest the Manor with a separate existence.

■ Likewise, a separate license issued to the Manor cannot create a separate institution. As shown in the record, separate licenses and licensing standards are required for a number of departments in the Hospital, such as nuclear medicine, the pharmacy, and rehabilitation. Separate licensing requirements do not transform departments into entities separate from the Hospital. The Manor's license application lists the Hospital as the legal operator of the Manor and, accordingly, the license authorizes the Hospital to operate the Manor.

■ The undisputed evidence in this record shows that the Hospital owns the property operated by the Manor. The undisputed evidence also shows that Hospital employees staff the Manor and the Manor is operated according to Hospital policies adopted and imposed by the Hospital's board of trustees. There is nothing in the record to suggest any entity or persons other than Hospital personnel, with the exception of patients at the Manor, occupy or use the Manor. Based on this evidence, there can be no doubt that the Hospital actually and exclusively occupied and used the Manor, as required by § 58.1-3606(A)(5).

■ This determination does not end our inquiry, however. We also apply the "dominant purpose test" in cases involving issues of property taxation exemption. That test, generally speaking, is whether the property in question promotes the purpose of the institution seeking the tax exemption. The test is applied in two different contexts; one in which the qualifying status of the *property owner* is challenged; the other in which the qualifying status of the *property* is challenged. An example of the first context is a challenge to a hospital's charitable status, and accompanying property taxation exemption, if some of the hospital's property is used for revenue generating purposes such as office rental space or a pharmacy. If the dominant purpose of the revenue generating property is not to obtain revenue or profit, but "to promote the purposes for which the [charity] was established and is incidental thereto," the hospital retains its charitable status and thus its property tax exemption. *Wise*, 203 Va. at 309, 124 S.E.2d at 220. *See also Board of Supervisors v. Medical Group Found., Inc.*, 204 Va. 807, 814, 134 S.E.2d 258, 263 (1964).

■ In the second situation, the qualifying status of the institution owning the property is clear, but the issue is whether the property of the qualified owner is entitled to the tax exemption. Under these circumstances, the property is entitled to the tax exemption regardless of any revenue it produces incident to its use, if the property has "direct reference to the purposes for which the [institution was cre-

ated,] and tends immediately and directly to promote those purposes." *Commonwealth v. Lynchburg Y.M.C.A.*, 115 Va. 745, 752, 80 S.E. 589, 591 (1914). *See also Washington County v. Sullins College Corp.*, 211 Va. 591, 595, 179 S.E.2d 630, 633 (1971); *County of Hanover v. Trustees of Randolph-Macon College*, 203 Va. 613, 617, 125 S.E.2d 812, 815 (1962).

■ In applying the dominant purpose test in this case we are mindful that it was originally developed and applied under the provisions of the prior constitution and implementing statutes to which a liberal interpretation was applied. *See Lynchburg Y.M.C.A.*, 115 Va. at 747-48, 80 S.E. at 590. However, the statutory provisions at issue in this case, as we have said, must be strictly construed and the dominant purpose test must be applied in the context of this rule of statutory construction.

■ There is no challenge in this case to the charitable status of the Hospital because of the Hospital's operation of the Manor. Rather, the issue in this case falls in the category in which the status of the property is challenged. Applying the dominant purpose test, we consider whether the Manor property has "direct reference to the purposes for which" the Hospital was created, and "tends immediately and directly to promote those purposes," and thus, is entitled to the exemption.

The County argues that the Manor was operated for the purpose of producing revenue for the Hospital. This goal is reflected, according to the County, in the Hospital directors' and officers' "fixation on the financial performance of" the Manor. Evidence of this fixation is demonstrated, the County asserts, in the president's monthly reports to the board of directors discussing the financial performance of the Manor and efforts to improve its "profitability," including discussions to improve the "payor mix" at the Manor by decreasing the number of Medicaid patients. We disagree with the County.

■ The interest of the Hospital's officers in the financial health of the Manor does not make the purpose of the Manor the production of revenue for the Hospital. Attention to the financial health of the Manor is important because any deficit in the operational expenses of the Manor must be met by the general fund of the hospital. Insuring that the Manor does not have a significant adverse financial impact on the ability of the hospital itself to function is a legitimate responsibility of the officers and board members of the Hospital. Notably, the record shows that the Manor produced no profit until 1992. The

record does not support the County's assertion that the purpose of the Manor is to produce income for the Hospital.

The County further argues that the Manor was not being conducted in a manner "not for profit but exclusively" as a charity. This argument misapplies the requirements of § 58.1-3606(A)(5). The requirement that an operation be conducted "not for profit but exclusively" as a charity applies to the institution seeking the exemption, in this case the Hospital. The statute does not impose that requirement upon the property for which exemption is sought. Compare § 58.1-3617 (requiring that property be used for charitable, religious, or educational purposes). Likewise, the dominant purpose test assumes that some activity is occurring which is revenue producing, thereby making the use of the property not exclusively charitable. But, the test is whether the Manor, even if it produces revenue, immediately and directly promotes the charitable purposes of the Hospital.

As recited above, one of the purposes of the Hospital is the provision of nursing services. Operation of the Manor directly promotes this purpose. Furthermore, the record shows that the Manor follows the Hospital's policies regarding admission of patients and collection of bills. Patients are admitted to both institutions without regard to their ability to pay, and collection of unpaid bills is undertaken by both the Hospital and the Manor when the patient has the means to pay but has refused to do so. These policies further the purpose of the Hospital to engage in activities which advance the general health of the community by providing nursing care to all members of the community.

While the judgment of a trial court comes to us with a presumption of correctness, the trial court cannot disregard undisputed credible evidence. *Cheatham v. Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984). Furthermore, application of the requirements of § 58.1-3606(A)(5) is a mixed question of fact and law and we are not bound by the trial court's determination in this regard. For the reasons discussed above, we conclude that the Hospital met its burden to establish that it was entitled to a tax exemption for the property it owned and operated as the Manor. The Hospital produced evidence that it was conducted exclusively as a charity, that the property of the Manor belonged to the Hospital and was "actually and exclusively occupied and used by" the Hospital, and that the use of the property furthered the charitable purposes of the Hospital.

█ Accordingly, we find that the trial court erred in holding that the property owned by the Hospital and operated as the Manor was not entitled to an exemption from taxation under § 58.1-3606(A)(5).[2] We will reverse the judgment of the trial court and remand the case for determination of the amount to be refunded to the taxpayer.

*Reversed and remanded.*

---

[2] The Hospital argues that the trial court used the wrong legal standard in reaching its conclusion. We disagree. We construe the trial court's finding that the Manor was not operated "as an integral part of the Hospital's operations" as tantamount to a finding that the Manor was not "actually and exclusively occupied and used by" the Hospital. Additionally, the trial court's request that portions of the transcript be transcribed for the purpose of determining "how this promotes the dominant purposes" reflects its understanding of the appropriate legal standards, even though, as indicated, these standards were improperly applied.