BENTON, J.,
dissenting.
The jury acquitted John Davis Rock of eight offenses: first-degree murder of Michael Cook, attempting to rob Cook, attempting to rob Scott Cox, attempting to rob Pamela Gravely, abduction of Jamie Gravely, abduction of Jessica Gravely, breaking and entering with the intent to commit a felony, and use of a firearm in the commission of robbery. The jury convicted Rock only of conspiracy to commit the robbery.
By statute, a trial judge “shall permit the victim, as defined in [Code] § 19.2-11.01 ... to testify ... regarding the impact of the offense upon the victim.” Code § 19.2-295.3.
For purposes of this chapter, “victim” means (i) a person who has suffered physical, psychological or economic harm as a direct result of the commission of a felony ..., or (v) a spouse, parent, sibling or legal guardian of such a person who is physically or mentally incapacitated or was the victim of a homicide.
Code § 19.2-11.0KB).
Application of the provisions of Code §§ 19.2-295.3 and Code § 19.2-11.01 involves a mixed question of law and fact. See Smyth County Comm. Hospital v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000) (holding that application of a statutory requirement “is a mixed question of fact and law”). When we review mixed questions of law and fact on appeal, we do so de novo and “are not bound by the trial [judge’s] determination in this regard.” Id. The trial judge’s determination that the Cook family were “victims” who suffered as a “direct result” of the robbery conspiracy was a mixed question of law and fact that we review de novo, and not for abuse of discretion. It is the province of this Court to define the statutory standard.
*265 Code § 19.2-295.3 allows for victim impact statements during sentencing. However, by any ordinary understanding of the statutory language, the victim that the statute references is the victim of the felony for which the defendant is found guilty. The pertinent provision reads: “Whether by trial or upon a plea of guilty, upon a finding that the defendant is guilty of a felony, the court shall permit the victim ... to testify in the presence of the accused regarding the impact of the offense upon the victim.” Id. (emphasis added). In this case, the scope of the victim impact testimony referenced in Code § 19.2-295.3 could only refer to the conspiracy to commit robbery, the sole offense for which the jury convicted Rock. When the jury convicted Rock only for conspiracy to commit robbery, the statutory definition of “victim” became fixed with reference to that offense.
Code § 19.2-295.3 explicitly defines “victim” as a person who suffers harm as a “direct result” of the commission of a felony offense. In no way can it be said that the murder of Cook was the direct result of Rock’s participation in the conspiracy to commit robbery. When used as an adjective, the relevant meaning of “direct” is “without intervening persons, conditions, or agencies; immediate: [as in] direct sunlight [or] direct answer” or “lacking compromising or mitigating elements.” American Heritage Dictionary 400 (Houghton Mifflin, 2nd ed.1991). A “result” is “[t]he consequence of a particular action, operation, or course; [an] outcome.” Id. at 1054. Thus, a “direct result” is the consequence of an action without intervening circumstances, or without compromising or mitigating elements. In other words, the action must immediately produce a result; it is a consequence flowing definitely, immediately, and largely automatically. It is a result that in the ordinary course of human experience can be expected automatically to occur. See generally Blue Stone Land Company v. Neff, 259 Va. 273, 277-78, 526 S.E.2d 517, 518-19 (2000) (in the context of damages, direct means flowing naturally or ordinarily from conduct or is a result that can be expected in the ordinary course of human experience); State v. Smith, 352 N.C. 531, 532 S.E.2d 773, 786 (2000) (defining *266 direct consequences as those having a “definite, immediate and largely automatic effect”); Frey v. State, 97 Okla.Crim. 410, 265 P.2d 502, 505 (1953) (holding that, in the criminal context, a “direct result” is one which immediately and necessarily follows an act).
Contrary to the plain meaning of direct result, the Commonwealth argues that, despite the number of intervening persons and conditions between the conspiracy to commit robbery and Cook’s murder, the result was “direct.” If that were the case, the jury certainly would have convicted Rock on all the related charges. However, they did not. Simply put, the Commonwealth’s argument rests upon an interpretation derived in patent disregard of the jury’s acquittal of Rock of the murder charge. Significantly, the jury received instructions concerning principal in the second degree liability and also rejected that as a basis for convicting Rock for any of these eight offenses, including the murder. By acquitting Rock, the jury necessarily rejected the Commonwealth’s attempt to implicate him in these eight offenses. The jury found that Rock was not present and that he did not know of or participate in the killing. Thus, the jury determined that there were a number of circumstances attenuating any connection between the conspiracy to commit robbery and the killing. Without Rock, each of those convicted for the crimes made an individual decision to commit these other offenses and each made a separate decision to carry a weapon. The actual killer made a decision, remote from Rock’s participation, to shoot Cook. These intervening events demonstrate that the lolling cannot be considered a direct result of the conspiracy to commit robbery within the meaning of the statute. Thus, the Cook family cannot be “victims” within the meaning of the statute.
While “victim impact testimony is relevant to punishment in a capital murder prosecution,” Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389-90 (1994), none of the factors that bear on punishment for the murder charge are relevant to sentencing Rock. Thus, this case is unlike Beck v. Commonwealth, 253 Va. 373, 484 S.E.2d 898 (1997), where the accused was convicted of capital murder. Indeed, the jury acquitted *267 Rock of murder. In determining which punishment to impose in a capital murder trial, Code § 19.2-264.2 requires a jury to consider, first, whether “there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society,” and second, “that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim.” By statute, these factors are relevant only “[i]n assessing the penalty of any person convicted of an offense for which the death penalty may be imposed.” Code § 19.2-264.2. Yet, this evidence was allowed in Rock’s sentencing even though he was acquitted of murder.
It is clear that the decisions in Beck and Thomas v. Commonwealth, 263 Va. 216, 559 S.E.2d 652 (2002), address factors bearing only upon capital murder convictions, and they demonstrably establish the prejudice the victim impact testimony had on Rock in this case. The testimony about psychological and economic harm to Cook’s family resulting from a killing caused by another was unduly prejudicial and inadmissible at Rock’s sentencing. “Evidence as to the result of another defendant’s trial for the same crime is irrelevant to the determination by the jury of the appropriate punishment for the defendant whose sentence is being weighed.” Coppola v. Commonwealth, 220 Va. 243, 254, 257 S.E.2d 797, 805 (1979). The victim impact evidence, therefore, was irrelevant to the conspiracy to commit robbery, and it encouraged the jury to rely upon raw emotions and other arbitrary factors in sentencing Rock. This evidence gave the Commonwealth the opportunity to divert the jury’s attention from the offense for which it convicted Rock and to obtain punishment for the very offense for which the jury acquitted Rock.
When “evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.” Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991). The victim impact testimony had no other effect than to inflame the jury and to *268 prejudice Rock during sentencing. The testimony from Cook’s family members about the impact of his death upon them and his dependents provided a component to Rock’s sentencing that had no purpose except to add an emotional element far out of proportion to the crime for which Rock was convicted. Unlike Beck, where the Supreme Court in addressing the issue of relevance “stress[ed] that [Beck’s trial] was a trial without a jury,” 253 Va. at 385, 484 S.E.2d at 906, Rock’s trial was before a jury. Unlike a judge, a jury is not “uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible.” Id. (citation omitted).
For these reasons, I would hold that the trial judge committed reversible error in permitting testimony at the penalty phase about the murder of Cook and the effect of the murder on his family.