COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Causey, Chaney and Callins
Argued at Hampton, Virginia


CITY OF VIRGINIA BEACH

OPINION BY
v.        Record No. 2073-23-1              JUDGE VERNIDA R. CHANEY
JUNE 10, 2025

LARRY W. MATHIAS, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge[1]

Julie S. Palmer (Elizabeth S. Chupik, Associate City Attorney;
Gregory D. Surber, Associate City Attorney; Harman Claytor
Corrigan & Wellman, on briefs), for appellant.

Joseph V. Sherman (William B. Newman; Poole Brooke Plumlee,
P.C., on brief), for appellees.


The City of Virginia Beach appeals the circuit court's dismissal of its petition for

condemnation without prejudice.  The City assigns seven errors to the circuit court, which come

down to three arguments: the circuit court (1) incorrectly applied the July 1, 2022 version of Code

§ 25.1-204(D), (2) misconstrued the requirements imposed by the July 2022 amendment, and (3)

acted too harshly by dismissing its petition.  We find these arguments unavailing.  Finding no error,

therefore, this Court affirms the circuit court's judgment.

---

[1] The final order was entered by Judge Steven Frucci during his service on the circuit
court and before his elevation to this Court.  Judge Frucci took no part in the consideration of
this appeal.

On June 7, 2022, the City submitted a written offer for purchase of Larry and Susan Mathias's property. The City needed the property for the construction and alteration of a public road adjoining the property. It offered Mathias $36,333, the amount the City appraised as the fair market value of the property. The City's offer included a copy of the appraisal, plan and plan sheets, acquisition guidelines, and a certification of compliance with Code § 1-219.1.

The City hired Bridge Trust Title Group to create a title report. The title examiner reviewed the title for the property going back 60 years to ascertain "the identity of the owner of the property and the nature and extent of the owners' interest in the property." The title examiner reported the findings to the City in the form of a title commitment including an offer of title insurance.

After the parties were unable to negotiate a purchase, the City filed a certificate of take on December 28, 2022. On June 26, 2023, the City filed a petition for condemnation of the property. The petition stated that the property was "necessary for public use" and that the City made a bona fide effort, as required by Code § 25.1-204, to purchase the property from Mathias.

Effective July 1, 2022, between the offer of purchase and filing the certificate of take, the General Assembly amended Code § 25.1-204(D) to state:

> Notwithstanding any provision of law to the contrary, a condemnor, prior to making an offer to acquire a fee simple interest in property by purchase or filing a certificate of take or certificate of deposit . . . shall (i) conduct or cause to be conducted an examination of title to the property and to determine the nature and extent of such owner's interests in the property, which examination of title shall be for at least 60 years; (ii) provide to such owner or owners a copy of the report showing the examination of title; and (iii) provide to such owner or owners a copy of all recorded instruments within the 60

---

[2] This Court reviews the "evidence in the light most favorable to the prevailing party below," Mathias, and gives them "the benefit of all reasonable inferences fairly drawn therefrom." *Fuentes v. Clarke*, 290 Va. 432, 439 (2015).

year title history of such property, including all deeds of trust, releases, liens, deeds, or other instruments identified in the report.

Following the effective date of the amendments to Code § 25.1-204(D), the City provided Mathias an updated title commitment that included some of the documents from the 60-year chain of title. The documents provided with the commitment were:

- The Deed from Teresa L. Vestal to Larry W. Mathias and Susan L. Mathias;

- A 1968 subdivision plat;

- A Dominion Virginia Power easement dated May 2, 1946;

- An abstract of judgment dated November 15, 2021;

- An abstract of judgment dated August 15, 2021.

The City conceded through one of its experts, Lucia Whitlow, that the commitment and accompanying report it provided Mathias did not "have everything that's in the [title] examination." Rather, the commitment and accompanying report contained only what the City "deem[ed] important."

On July 20, 2023, Mathias answered the petition for condemnation, demanding a full examination of title as required by the updated Code § 25.1-204(D). Mathias argued that the amendments required the City to provide a title report and all documents in the land record 60 years before condemnation and that, based on the City's failure to comply with the statutory prerequisites, the circuit court did not have jurisdiction over the matter. The City responded that its bona fide offer complied with Code § 25.1-204(D) when it extended the offer. The City also alleged that even if it was required to provide every recorded document from the preceding 60 years, its failure to do so was a procedural defect that did not warrant invalidation of the certificate of take.

After hearing arguments on the matter, the circuit court ruled that the City needed to comply with the July 1, 2022 amendments to Code § 25.1-204(D)(iii). In its final order, the

circuit court held that the City failed to comply with Code § 25.1-204(D) by failing to provide Mathias with all recorded instruments relating to the property. The circuit court required the City to provide Mathias "'all recorded instruments' within the 60-year examination of title relating to the property, without any limitation." The circuit court invalidated the certificate of take and dismissed the condemnation proceedings without prejudice. The City appeals.

ANALYSIS

I. Standard of review

This appeal requires us to (1) determine what version of Code § 25.1-204 applied to this proceeding and (2) review the circuit court's factual findings of the City's compliance with that statute. "[A]pplication of the requirements of [a statute] is a mixed question of fact and law[.]" *Smyth Cnty. Comm. Hosp. v. Town of Marion*, 259 Va. 328, 336 (2000). "Statutory interpretation is a question of law we review de novo." *Rivera v. Mantech Int'l Corp.*, 81 Va. App. 170, 175 (2024). However, this Court is bound by the circuit court's "findings of fact unless they are plainly wrong or without evidence to support them." *Forbes v. Cantwell*, 78 Va. App. 454, 472 (2023) (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). This Court reviews the "evidence in the light most favorable to the prevailing party below," here, Mathias, "and give[s] [them] the benefit of all reasonable inferences fairly drawn therefrom." *Fuentes v. Clarke*, 290 Va. 432, 439 (2015).

II. The July 2022 version of Code § 25.1-204(D) applies to this action.[3]

A. *Code § 25.1-204's enacting legislation explicitly specifies that it applies to all condemnation proceedings initiated after July 1, 2022—such as this one.*

The City argues that the version of Code § 25.1-204 predating the July 1, 2022 amendments applies to this case because the City made its bona fide offer to Mathias in June 2022. However,

---

[3] Since no Virginia appellate court has construed Code § 25.1-204(D), this is a matter of first impression.

"[T]he provisions of this act shall apply only to the taking of or damage to property that has occurred on or after July 1, 2022, *or a condemnation proceeding that has been filed on or after July 1, 2022, as appropriate.*"  2022 Va. Acts ch. 735 (third enactment clause).  Therefore, we disagree.

Before July 1, 2022, Code § 25.1-204(D) read:

> Notwithstanding any provision of law to the contrary, a condemnor, prior to making an offer to acquire a fee simple interest in property by purchase or filing a certificate of take or certificate of deposit . . . shall (i) conduct or cause to be conducted an examination of title to the property in order to ascertain the identity of each owner of such property and to determine the nature and extent of the owner's interests in the property and (ii) provide to such owner or owners a copy of the report of status of title.

2020 Va. Acts. ch. 793, at 1240.  After July 1, 2022,[4] Code § 25.1-204(D) reads:

> Notwithstanding any provision of law to the contrary, a condemnor, prior to making an offer to acquire a fee simple interest in property by purchase or filing a certificate of take or certificate of deposit . . . shall (i) conduct or cause to be conducted an examination of title to the property and to determine the nature and extent of such owner's interests in the property, *which examination of title shall be for at least 60 years*; (ii) provide to such owner or owners a copy of the report showing the examination of title; *and* (iii) *provide to such owner or owners a copy of all recorded instruments within the 60-year title history of such property, including all deeds of trust, releases, liens, deeds, or other instruments identified in the report.*

(Emphases added) (citations omitted).  "[W]hen current and prior versions of a statute are at issue, there is a presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law."  *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 157 (2018) (quoting *W. Lewinsville Heights Citizens Ass'n v. Bd. of Supervisors*, 270 Va. 259, 265 (2005)).  And when the General Assembly supplies an effective date in the legislation enacting a statute we will apply it. *See Guest v. Commonwealth*, 78 Va. App. 187, 196 (2023) ("On March 18, 2021, the General

---

[4] And until July 1, 2025.  *See* 2025 Va. Acts ch. 125.

Assembly released Code § 18.2-104 in its entirety, with an effective date of July 1, 2021." (citing 2021 Va. Acts Sp. Sess. I ch. 192)).

Code § 25.1-204(D)'s enacting legislation specifies that it applies to "condemnation proceeding[s] that [have] been filed on or after July 1, 2022[.]" 2022 Va. Acts ch. 735 (third enactment clause). The City filed its certificate of take in December 2022. The City filed its petition for condemnation in June 2023. By the enacting legislation's explicit terms, the July 2022 amendments to Code § 25.1-204 apply to this action.

   B. *The City's bona fide offer of purchase does not change the effective date of Code § 25.1-204.*

The City argues that, because it made a bona fide offer to buy Mathias's property in June 2022, the previous version of the statute applies. The City's argument suffers from two major defects.

First, Code § 25.1-204 does not specify that efforts of purchase predating July 1, 2022 trigger an older version of the statute. Nor does the enacting legislation tie the effective date of the 2022 amendments to the extension of a bona fide offer to purchase alone. The omission of such a provision is meaningful, as other statutes in the chapter *do* explicitly set forth the application of certain provisions based on a date. Code §§ 25.1-242, -243, and -244 all provide varying levels of interest rates on just compensation depending on whether interest started accruing before 1970, 1981, or 2003.[5] The presence of carveouts elsewhere in the chapter, and the absence of a carveout in Code § 25.1-204, reinforce the conclusion that the legislature did not intend to provide any

---

[5] Code §§ 25.1-242, -243, and -244 cover determining just compensation in a new trial, withdrawing money paid into court, and calculating interest just compensation, respectively, in eminent domain proceedings. These matters are distinct from the issue on appeal—the City's obligations before filing for condemnation. Still, these statutes are in pari materia because they all address the same major topic: eminent domain. *See Antle v. Commonwealth*, 83 Va. App. 485, 510 (2025) ("[S]tatutes may be considered as in pari materia when they relate to the same person or thing, the same class of persons of things or to the same subject or to closely connected subjects or objects." (quoting *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999))). Therefore, the wording of these statutes is informative.

exceptions to the requirements in Code § 25.1-204(D). *See, e.g.*, *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 682-83 (2024) ("[W]hen the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code . . . the difference in the choice of language was intentional." (second alteration in original) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011))); *Gionis v. Commonwealth*, 76 Va. App. 1, 12 (2022) ("The legislature could certainly have included language in HB 2290 that manifested a clear intent that the repeal would . . . take effect at a time other than the statutorily prescribed effective date for newly enacted legislation. However, the General Assembly did not do so.").

Second, no implied carveout is textually anchored to the extension of an offer to purchase. The statute requires "a condemnor, prior to making an offer to acquire a fee simple interest in property by purchase *or* filing a certificate of take *or* certificate of deposit" to provide a property owner with an examination of title. Code § 25.1-204(D) (emphases added). The City argues that the disjunctive actions described in subsection D should be read conjunctively to apply to only one of the enumerated actions: once you either (i) offer to purchase, (ii) file a certificate of take, or (iii) file a certificate of deposit. In turn, the City concludes, taking any one of these actions determines the effective date of the statute.

This conclusion does not follow and is incompatible with the statute's plain language. Because the above-enumerated requirements are listed disjunctively, the requirements of subsection D apply before taking *any* of those actions, regardless of whatever action the City took before. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("With the conjunctive list, all three things are required—while with the disjunctive list, at least one of the three is required, but any one (or more) of the three satisfies the requirement."). Code

- 7 -

§ 25.1-204(D) cannot plausibly be read otherwise. The operative version of Code § 25.1-204(D) is not determined by the first occurring of the three actions listed above.

The City cites *Commonwealth Transportation Commissioner v. Klotz, Inc.*, 245 Va. 101 (1993), to support the argument that extending a bona fide offer for purchase controls what version of Code § 25.1-204 applies. It quotes this language: "the only offer recognized within the statutory framework of condemnation is that which occurs at the inception of the process." *Id.* at 105.

*Klotz* does not address the effect of a bona fide offer on determining the operative version of the statute, but whether a bona fide offer binds a condemnor to purchase property for a given price. In *Klotz*, the Commissioner offered the property owner $15,190 to buy two lots of property, which Klotz rejected. *Id.* at 103. The Commissioner then filed a certificate of take reflecting the offer and then an amended certificate of take requesting only *one* parcel of land and an easement valued at $71. *Id.* at 104. The property owner then "agreed" to the original offer amount, and the circuit court enforced the agreement. *Id.* Reversing the circuit court, the Virginia Supreme Court held that the

> only *offer* recognized within the statutory framework of
> condemnation is that which occurs at the inception of the process. . . .
> Here, the [Commissioner] made an offer to purchase the property on
> May 22, 1987, and Klotz, Inc., *rejected* it on June 4, 1987.
> Therefore, as of June 4, 1987, the offer *ceased to exist.*

*Id.* at 105 (emphases added). Thus, the Virginia Supreme Court rejected the property owner's argument that filing the certificate of take renewed the initial offer that the property owner rejected. *See id.* This case tells us nothing about how a bona fide offer could modify the effective date of a statute. *Klotz*, therefore, is distinguishable.[6]

---

[6] We note that, in *Klotz*, once the property owner rejected an initial offer to purchase the property, that offer "ceased to exist." 245 Va. at 105. This suggests that the City's bona fide offer in *this* case ceased to exist upon Mathias's rejection, and the only available operative date for the statute is the date the City issued the certificate of take.

For the foregoing reasons, this Court concludes that the July 2022 version of Code § 25.1-204(D) applies to this action.

### III. The City failed to comply with Code § 25.1-204(D).

The City is obligated to strictly comply with the condemnation statutes' requirements. *See PKO Ventures, LLC v. Norfolk Redev. & Hous. Auth.*, 286 Va. 174, 182 (2013) ("We have held that 'in the construction of statutes conferring the power of eminent domain, every reasonable doubt is to be [resolved] adversely to th[at] right[.] Statutes authorizing the power of eminent domain must, therefore, 'be strictly construed[.]'" (citations omitted) (first and second alterations in original) (first quoting *Sch. Bd. v. Alexander*, 126 Va. 407, 413 (1919); and then quoting *3232 Page Ave. Condo. Unit Owners Ass'n v. City of Va. Beach*, 284 Va. 639, 645 (2012))).

We once again set out the text of Code § 25.1-204(D):

> Notwithstanding any provision of law to the contrary, a condemnor, prior to making an offer to acquire a fee simple interest in property by purchase *or* filing a certificate of take *or* certificate of deposit . . . shall (i) conduct or cause to be conducted an examination of title to the property and to determine the nature and extent of such owner's interests in the property, which examination of title shall be for at least 60 years; (ii) provide to such owner or owners a copy of the report showing the examination of title; *and* (iii) provide to such owner or owners a copy of all recorded instruments within the 60-year title history of such property, including all deeds of trust, releases, liens, deeds, or other instruments identified in the report.

(Emphases added). As discussed in Part II, the emphasized "or"s set forth *dis*junctive requirements—the statute applies to any one of the enumerated actions. On the other hand, the emphasized "and" signals *con*junctive requirements—when subsection D applies, a condemnor must perform the action in all three subsections. *See, e.g.*, *Evans v. Commonwealth*, 82 Va. App. 612, 626 (2024) ("The duties to stop, report, and render aid are 'written in the conjunctive.' The prosecution 'can establish [a defendant's] guilt by proving [that the defendant] failed to perform any

one of [those three] duties under the statute.'" (alterations in original) (quoting *O'Connell v. Commonwealth*, 48 Va. App. 719, 733 (2006))).

Put plainly, Code § 25.1-204(D) requires that, before a condemnor starts the process to obtain title to property by either:

1. offering to buy it,

2. filing a certificate of take, *or*

3. filing a certificate of deposit,

the condemnor must first:

i. get an examination of title going back 60 years that permits identifying (a) each owner of the property and (b) what interests they have in the property,

ii. give the owner the report showing that examination of title, *and*

iii. give the owner a copy of all deeds, deeds of trust, releases, liens, or any other instrument identified in the report going back 60 years.

Thus, before the City filed its certificate of take, it needed to comply with subsections (i), (ii), and (iii) of Code § 25.1-204(D). The circuit court found that the City did not comply with Code § 25.1-204(D), and that finding has evidentiary support. *See Ugarte v. Ugarte*, 84 Va. App. 50, 69-70 (2025) ("[A] circuit court's finding of fact 'will not be set aside unless plainly wrong or without evidence to support it.'" (quoting *Payne v. Payne*, 77 Va. App. 570, 584 (2023))).

A. *The City failed to provide a 60-year history examination of title pursuant to Code § 25.1-204(D).*

The City argues that "examination of title" is synonymous with "title commitment," "title report," and "status of title." For this proposition, the City cites only its expert's affidavit, which the circuit court was free to disregard. "Contrary to the circuit court's interpretation of" the statute, the City asserts, "a title examiner would not produce a report that included documents which did not encumber, or which no longer encumbered, the property." Thus, the City concludes, the title

commitment letter it provided with its certificate of take "is consistent with the General Assembly's stated purpose of the examination of title, which is to 'ascertain the identify of each owner of such property and to determine the nature and extent of such owner's interests in the property.'" We disagree.

The terms "examination of title," "title commitment," and "title report," appear not to have been defined in Title 25.1 or in any Virginia appellate cases. "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Harris v. Commonwealth*, 83 Va. App. 571, 581 (2025) (alterations in original) (quoting *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020)). While interpreting a statute undefined either by the legislature or by caselaw, we may look to common usage to determine a term's plain meaning. *See* Scalia & Garner, *supra* 33 (the "Fair Reading" method of statutory interpretation uses context derived in part from "a word's historical associations acquired from recurrent patterns of past usage").

Generally, an examination of title "is a critical analysis or interpretation of the condition of title revealed by the documents disclosed" through a title search. *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 626 (1992). Nationwide, the terms "examination of title" and "title commitment" do not appear to be used synonymously. *Chase Home Fin., LLC v. Risher*, 746 S.E.2d 471, 475 (S.C. Ct. App. 2013) ("[N]o information was presented about [the attorney's] review of the title examination, the title commitment, the loan closing instructions and documents, the deed, and the failure to obtain Cassandra's signature on the mortgage."); *Real Est. Bar Ass'n for Mass. v. Nat'l Real Est. Info. Servs.*, 946 N.E.2d 665, 681 (Mass. 2011) ("NREIS orders a title examination and abstract from a third party[.] It uses the information in the title abstract . . . to fill out one of the underwriter's title commitment forms."); *Knight v. Stewart Title Guar. Co.*, 2017 U.S. Dist. LEXIS 5141, at *3 (E.D.

Ky. Jan. 13, 2017) ("[T]he agent typically performs a title examination[.] The agent *also prepares* a title commitment[.]" (emphasis added)).

Likewise, a "title report" appears to be an item obtained for the purposes of insurance or selling, mortgaging, or foreclosing upon property. *See, e.g.*, *Thompson v. Metcalf*, 700 S.W.3d 581, 585 (Mo. Ct. App. 2024) ("Diana obtained a title report for the Property, which showed title vested in Mother subject to the rights of Diana under the Certificate."); *Petix v. Gillingham*, 528 P.3d 1152, 1157 (Or. Ct. App. 2023) ("By mid-March, defendants received an updated title report that provided information revealing to them, for the first time, a number of significant liens against the property[.]"); *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 504 P.3d 834, 840 (Wash. Ct. App. 2022) (Chicago Title rendered "a title report" before a party foreclosed on two properties), *rev'd in part on other grounds*, 534 P.3d 339 (Wash. 2023); *J.P. Morgan Chase Bank N.A. v. Hall*, 996 N.Y.S. 309, 313 (N.Y. Sup. Ct. App. Div. 2014) ("Indeed, the pleading alleges that New York Land was aware that the abstract and title report that it prepared were to be used for the specific purpose of facilitating a sale or mortgage of the property[.]"); *cf.* Danville, Va., Code § 10.5-2 ("*Property owner certification* means a notarized certificate from property owner [establishing among other things] that the title of the property is not in dispute, as evidenced by a title report or title insurance commitment from a title insurance company[.]").[7]

Finally, a "status of title" appears to establish ownership or interest in a property. *See, e.g.*, *Stump v. Swanson Dev. Co.*, 5 N.E.3d 279, 300 (Ill. Ct. App. 2014) ("[T]he purpose of the Conveyances Act is to give third parties the opportunity to ascertain the status of title to the property and to protect subsequent purchasers against unrecorded interests."); *First Title Co. v. Garrett*, 860 S.W.2d 74, 81 (Tex. 1993) (Hecht, J., dissenting) ("That supposition, although entirely reasonable

---

[7] *See also Bradford v. Goodwin*, 56 Va. Cir. 370, 371 (Loudoun Cir. Ct. 2001) ("The title report prepared in connection with the sale of the instant property disclosed an unreleased judgment against a predecessor in title to the seller.").

in most instances, does not transform a statement about what the title insurance will cover to one about what the status of title is."); *cf.* Code § 33.2-1001(D) ("The Commissioner of Highways shall also provide to a property owner a copy of any report of the status of title prepared in connection with such acquisition[.]").[8]

The City has not provided any authority in support of the proposition that the terms "examination of title," "title commitment," "title report," and "status of title" are interchangeable. *See Clark v. Commonwealth*, 78 Va. App. 726, 765 (2023) ("[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." (alteration in original) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017))).

The circuit court took expert testimony about the City's title commitment and found that it did not contain the contents of a complete examination of title as required by Code § 25.1-204(D). The circuit court found that the City's title commitment "is not equivalent to an accurate report of the title examination" and was "not a full and accurate report showing the examination of title." The circuit court found, as a matter of fact, the City's report did not cover the full 60-year history, and we are bound by that finding. Moreover, the City itself admitted that its title commitment did not include all the documents in the property's 60-year history—only the documents that its title company believed affected title to the property.

Therefore, based on the circuit court's factual findings and the City's admissions, we find no error in the circuit court's judgment that the City failed to provide a 60-year history in its examination of title pursuant to Code § 25.1-204(D).

---

[8] *See also Wimmer v. R&R Joint Ventures*, 93 Va. Cir. 354, 354-55 (Botetourt Cir. Ct. 2016) (quoting a deed that represented "no title examination has been performed and no certification as to status of title is made by [the] attorney preparing this deed").

B. *The City's production of a title commitment to Mathias did not satisfy the City's obligation to provide a 60-year examination of title pursuant to Code § 25.1-204(D).*

1. The plain text of Code § 25.1-204(D) does not permit condemnation upon the provision of an incomplete examination of title.

The City argues that it, in the title commitment, provided all the "relevant" documents to Mathias that were within the property's 60-year history. Therefore, the City concludes it substantially complied with the requirements in the report. Again, we disagree.

Before issuing a certificate of take, the City had to give Mathias "a copy of *all recorded instruments* within the 60-year title history of [their] property, including all deeds of trust, releases, liens, deeds or other instruments identified in the *report* [*showing the examination of title*]." Code § 25.1-204(D)(iii) (emphases added). As explained above, the "examination of title" is not the same as a "commitment of title," or "title report," or "status of title."

According to the City's own expert, an examination of title does not contain all the same documentation as the City's reports. The circuit court found that the expert established that (1) an examination of title and a title commitment are different, (2) although an examination of title was performed, only a title commitment letter was provided to Mathias, and (3) there are recorded instruments in the examination of title that are excluded from the title commitment letter. The City's provision of incomplete documentation to Mathias does not meet this requirement.

2. Substantial compliance does not meet the requirements of Code § 25.1-204(D).

The City zeroes in on the word "the" preceding "60-year title history" and "report" in Code § 25.1-204(D) to suggest that a copy of whatever report the City generated is what it must give to property owners. The City urges this Court to read Code § 25.1-204(D)(iii)'s requirement that it provide "a *copy of all recorded instruments* within *the* 60-year title history of such property, including all deeds of trust, releases, liens, deeds, or other instruments *identified in the report*" to

mean the report that City produced, adequate or not. (Emphases added). This interpretation defies the plain text of the statute.

The "plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results." *Harris v. Commonwealth*, 83 Va. App. 571, 584-85 (2025) (quoting *Taylor v. Commonwealth*, 298 Va. 336, 342 (2020)). Code § 25.1-204(D)(iii) refers to the 60-year examination of title in subsection (D)(i). Subsection (iii) also requires "all recorded instruments" found in the history. The City argues that the phrase "other instrument identified in the report" modifies the list of documents required by subsection (iii) and somehow renders its good-faith attempted compliance adequate under the statute. The City ignores that "all recorded instruments" is preceded by the word "including," which here means "including but not limited to." *See City of Emporia v. Cnty. of Greensville*, 81 Va. App. 28, 39 (2024) (holding that the word "include" in a statute generally "implies that the provided list of parts or components is not exhaustive and, thus, not exclusive" unless the word "including" is "used in a restrictive, limiting sense" (quoting *Auer v. Commonwealth*, 46 Va. App. 637, 645-46 (2005))).

The City contends that the phrase "in order to ascertain the identity of each owner of such property and to determine the nature and extent of such owner's interest in the property" in Code § 25.1-204(D)(i) *also* permits substantial compliance with the statute. This, the City asserts, is because this statement of purpose shows that *any* type of report qualifies as long as the City *means* to provide this information to the person whose property is to be condemned.

The requirement that we strictly construe condemnation statutes discourages so permissive an interpretation of Code § 25.1-204(D). It is not apparent that the phrase "in order to ascertain the identity of each owner of such property" modifies or describes the obligations imposed by the statute—to conduct a *full* examination of title. Since this reading is, at best, doubtful, strict

- 15 -

construction requires us resolve that doubt in Mathias's favor. This Court must assume, therefore, that the "ascertain the identity" clause does not describe or modify the purpose of the "examination of title" requirement.

Even if we read this clause as an announcement of purpose, an announcement of purpose in a legislative enactment does not by itself override the requirements set by the plain text of the statute. *See Eley v. Commonwealth*, 70 Va. App. 158, 164 (2019) ("Only if a statute is found to be ambiguous may the Court consider other factors such as purpose, reason and spirit of the law[.]"). As stated by Justice Scalia and Professor Garner:

> [A]n expression of specific purpose in the prologue [of a statute] will not limit a more general disposition that the operative text contains. . . . Th[is] limitatio[n] on broad expressions of purpose do[es] not apply only when those expressions are contained in the preface rather than the body of the text. . . . Just as the placement in a prologue does not eliminate the relevance of this material, placement in the text does not augment it.

Scalia & Garner, *supra* 217, 220. The condemnor must receive an "examination of title" going back 60 years—the reason for that requirement is irrelevant to the City's need to strictly comply with the statute. Assessing the policy values behind a legislative enactment is a legislative issue, which this Court will not address. *See Williams v. Commonwealth*, 80 Va. App. 637, 657 (2024) ("When public policy arguments 'contravene clear statutory language,' they 'should be addressed to the legislature, not the courts.'" (quoting *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 474 n.12 (2022))).

IV. The circuit court did not abuse its discretion by dismissing the City's petition without prejudice.

The City argues that "the circuit court exacted the harshest possible remedy—dismissal—in the face of an alleged procedural error made, if at all, in good faith." This Court reviews the decision to grant a motion to dismiss for an abuse of discretion. *Theologis v. Weiler*, 76 Va. App. 596, 612 (2023). The circuit court "abuses its discretion by (1) failing to consider a significant

relevant factor, (2) giving significant weight to an irrelevant or improper factor, (3) committing a clear error of judgment in assigning weight to all proper factors, or (4) making a mistake of law." *Pereira v. Commonwealth*, 83 Va. App. 431, 445 (2025) (quoting *Citizens for Fauquier Cnty. v. Town of Warrenton*, 81 Va. App. 363, 385 (2024)).

We find no abuse of discretion on this record. The City needed to strictly comply with Code § 25.1-204(D). It did not, so the circuit court dismissed the City's petition without prejudice. The City nonetheless cites three cases to support the proposition that this was error. None of those cases supports the City's position.

The City relies first on *Whitt v. Commonwealth*, 61 Va. App. 637, 659 (2013) (en banc) (declining to dismiss an appeal where an appellant could easily amend a formally defective assignment of error). In *Whitt*, the appellant failed to file a petition for appeal complying with Rule 5A:12, and the Commonwealth moved to dismiss the appeal. *Id.* at 646. This Court, en banc, reversed the decision of a panel granting the Commonwealth's motion, holding "[d]ismissal is a harsh sanction, *particularly when other remedies are available*." *Id.* at 658 (emphasis added). The "other remedy" available in *Whitt* was granting leave to amend the petition to comply with Rule 5A:12. *See id.* at 659 ("A court on appeal . . . ordinarily should, upon a motion, permit a litigant to correct formal defects and remedy errors of oversight in the assignment of error, particularly when the requested amendment renders the revised assignment of error more precise[.]"). *Whitt* did not address whether or how a motion to dismiss should be granted by a circuit court, the issue before us on this appeal.

The City next cites *Commissioner of Highways v. Sadler*, 93 Va. Cir. 74, 84 (Petersburg Cir. Ct. Apr. 6, 2016), a circuit court decision, to support the proposition that dismissal is too harsh a sanction. There, the circuit court rejected a property owner's argument that a downward amendment in a certificate of take did not require dismissal of a complaint. *See id.* at 85 ("Simply

stated, this is not practical, and no reasonable Court could conclude that the General Assembly would impose this harsh, exacting standard on its delegated agent."). The circuit court, therefore, denied the property owner's motion and gave the Commissioner leave to amend. *Id.*

Aside from the fact that circuit court decisions are not binding, *Sadler* is distinguishable on three grounds. First, it involved a certificate of take that met the statutory requirements, aside from the reduction. *Id.* at 81. Second, *Sadler* predates the relevant enactment here. Third, the *Sadler* decision cited by the City was a subsequent decision in an identical case, *Commissioner of Highways v. Sadler*, 93 Va. Cir. 74, 78 (Petersburg Cir. Ct. Mar. 16, 2016), which interpreted a statute governing the pleadings for a condemnation petition, rather than addressing the prerequisites for such a petition, the issue on appeal. *See Comm'r of Highways v. Sadler*, 93 Va. Cir. 74, 78 (Petersburg Cir. Ct. Mar. 16, 2016) (citing Code § 25.1-206).[9]

Finally, the City cites *State Highway & Transportation Commissioner v. Herndon*, 225 Va. 380 (1983), to support the argument that its good faith is sufficient to overcome dismissal. The City quotes this language from *Herndon*: "the offer was bona fide, even though erroneous. Mere incorrectness in the quantum of the offer, without a showing of bad faith, is insufficient to make out a violation of the mandate." In *Herndon*, the Virginia Supreme Court reversed the circuit court's decision to dismiss a case because the amount offered by the Commissioner to the landowner was insufficient to constitute a bona fide offer. *Id.* at 386. The Supreme Court held that, in the absence of a demonstration of bad faith, the Commissioner should have been allowed to amend the purportedly inadequate offer amount as provided for by statute at the time. *Id.* (citing former Code § 33.1-125). *Herndon* did not address the propriety of dismissal as a remedy, but rather it held that

---

[9] This case is a follow-on case to an earlier decision declining to dismiss a petition for lack of subject matter jurisdiction. *See Comm'r of Highways v. Sadler*, 93 Va. Cir. 74, 78 (Petersburg Cir. Ct. Mar. 16, 2016). The cases involve identical parties and have identical docket numbers.

the Commissioner should have had a chance to amend its offer.  *Herndon,* therefore, does not counsel against dismissal in this case.

Neither *Whitt*, *Sadler*, nor *Herndon* supports the City's position that the circuit court abused its discretion by dismissing its petition for condemnation without prejudice.  Dismissal under the circumstances of this case is not an abuse of discretion.  As the City acknowledged during oral argument, dismissing its petition without prejudice allows the City to refile its case after complying with Code § 25.1-204(D).

CONCLUSION

The City did not comply with Code § 25.1-204(D) before filing its certificate of take and initiating this condemnation proceeding against Mathias.  The circuit court did not err by dismissing the case without prejudice.  Therefore, this Court affirms the circuit court's judgment.

*Affirmed.*